713 So.2d 762 (1998)
Major BENOIT, Plaintiff-Appellant,
v.
FRANK'S CASING CREW, et al., Defendants-Appellees.
No. 97-1522.
Court of Appeal of Louisiana, Third Circuit.
May 20, 1998.
*764 Lionel H. Sutton, III, New Iberia, for Major Benoit.
David Keith Johnson, Baton Rouge, for Frank's Casing Crew and Rental Tools.
Before DOUCET, C.J., and SULLIVAN and GREMILLION, JJ.
SULLIVAN, Judge.
Major Benoit appeals the dismissal of his claim for supplemental earnings benefits (SEB) after the workers' compensation judge found that Benoit (1) forfeited his right to benefits under La.R.S. 23:1208 and (2) failed to prove that he is unable to earn ninety percent of his pre-injury wages.

Discussion of the Record
Benoit, twenty-one at the time of the accident, was employed as a pipe-yard helper by Frank's Casing Crew and Rental Tools (Frank's) in Lafayette, Louisiana. He was injured on December 23, 1993, when his co-employee, Chad Short, lost control of the truck in which he was a passenger and crashed into a pipe on Frank's premises.
Benoit was diagnosed with a herniated disc. On June 19, 1994, he underwent surgery to excise, bilaterally, the disc at L5-S1. His treating orthopedic surgeon, Dr. Charles Olivier, initially released Benoit to light duty employment on November 11, 1994, with permanent restrictions of lifting only twenty pounds occasionally, ten pounds frequently. However, in March of 1995, Benoit's condition worsened. In May of 1995, Dr. Olivier again placed him on a no-work status and prescribed additional epidural injections after an MRI revealed the formation of scar tissue. In June of 1995, Benoit was involved in another automobile accident in which his car, a Corvette, was totaled. He reported to Dr. Olivier that this second accident did not re-injure his back. On December 17, 1996, Dr. Olivier released Benoit to sedentary employment. In his deposition of August 6, 1997, Dr. Olivier testified that Benoit was capable of light duty work. In February of 1995, before the second accident, Dr. Olivier had reported that Benoit was permanently precluded from performing his previous job.
Frank's, through its compensation carrier, Louisiana Workers' Compensation Corporation (LWCC), requested that another orthopedic surgeon, Dr. Gregory Gidman, conduct both an independent medical examination and a functional disability evaluation. Dr. Gidman performed these services on July 11, 1995. Dr. Gidman concluded that Benoit had reached maximum medical improvement and assigned him a ten percent permanent impairment of the body as a whole. After reviewing the functional disability results, Dr. Gidman concluded that Benoit could perform medium level employment, with one-time, isometric lifting of forty to fifty pounds and occasional lifting of ten to fifteen pounds.
Dr. Jimmie Cole, a clinical psychologist, examined Benoit in June and July of 1997. Dr. Cole noted depression and possible symptom exaggeration or malingering. Dr. Cole strongly recommended "some type of rehabilitation plan" to "get this young man moving forward with his life."
LWCC paid Benoit temporary total disability benefits of $230 a week based upon an average weekly wage of $345. LWCC terminated Benoit's compensation benefits on April 16, 1996, but continued to pay his medical expenses. Benoit filed this disputed claim for compensation on March 7, 1997. In its answer, LWCC asserted the defense of forfeiture of benefits, citing Benoit's conviction of false swearing in connection with an *765 intentional tort suit that Benoit filed against Frank's.
At trial of his workers' compensation claim, Benoit admitted that he pleaded guilty to one charge of false swearing. The guilty plea resulted in the dismissal of his intentional tort suit. That charge was based upon a taped conversation between Benoit and his co-employee, Short, in which Benoit offered to pay Short to give a statement about the condition of the truck at the time of the accident. Benoit denied that he asked Short to lie for him, claiming that he only offered to pay Short because "he [Short] kept asking me how much he would get for his statement, how much I would pay him."
Benoit also testified about his inability to find work within the restrictions placed by Dr. Olivier. He acknowledged that LWCC's vocational rehabilitation counselor provided him with a list of jobs, but he testified that many of those companies were not hiring or would not hire someone with his back condition. Benoit said that he undertook his own unsuccessful job search, introducing a three-page, handwritten list of potential employers that he contacted between February and May of 1997. He testified that none of these contacts resulted in an interview. Most of the listings that he recorded contained the handwritten notation, "Would not hire [because] of condition." On cross-examination, Benoit said that he did not keep a record of the person that he contacted at each company, and he could only recall the name of one contact, "Kenny," at the Avery Island salt mine. He also denied that he could wash his car or do his own laundry.
Stanford McNabb, a vocational rehabilitation counselor, testified about the services he provided to Benoit at LWCC's request. On September 22, 1995, after meeting with Benoit and Dr. Olivier and reviewing Dr. Gidman's reports, McNabb mailed Benoit a list of thirty-six potential jobs that he identified from the Job Service and local newspaper advertisements. McNabb gave Benoit advice about applying for jobs, and he performed a transferrable skills analysis to identify any learned skills that would help Benoit find another position. He testified that Benoit missed two of their scheduled appointments and never returned an interest checklist that would have aided in the job search. McNabb testified that Dr. Olivier approved four positions as within Benoit's abilities: a private fire patrol position that paid $4.75 an hour (but may have only been part-time), two telemarketing jobs, and a finishing operator. Dr. Olivier did not approve two other submitted positions, a security guard and a cab driver.
Under cross-examination, McNabb admitted that he only contacted four employers on the list he mailed to Benoit in September of 1995 and that the list did not indicate whether those positions were within Benoit's medical restrictions. McNabb further testified that Dr. Olivier did not approve those four positions until October 31, 1996 (six months after LWCC terminated benefits) and that he did not inform Benoit of those jobs Dr. Olivier approved until January of 1997.
Jerry Beard, director of security for Frank's, testified that he contacted the Lafayette Police Department after Short reported that Benoit had approached him about giving a statement in the tort suit. Beard subsequently obtained a copy of the transcript of the recorded statement between Benoit and Short on January 9, 1995 that defendants introduced into evidence. Beard also testified that on January 7, 1995, while conducting surveillance for Frank's, he observed Benoit wash his car for approximately three hours. During this time, Benoit did not appear strained in his movement and did not require any assistance.
After taking the matter under advisement, the workers' compensation judge found that Benoit forfeited his right to benefits based upon three statements: his conviction for false swearing, his statement to Dr. Olivier that he did not injure his back in the second accident, and his statement that he could not wash his car. The workers' compensation judge also found that Benoit did not prove entitlement to SEB.

Opinion

a. Standard of Review
In Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.7/1/97); 696 So.2d 551, the supreme court reaffirmed that *766 the manifest error standard governs the review of an SEB claim. In reiterating the principles of that standard, the court stated:
In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Freeman [v. Poulan/Weed Eater], 93-1530 at p. 5 [ (La.1/14/94) ], 630 So.2d [733] at 737-38; Stobart v. State, 617 So.2d 880, 882 (La.1993); Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). Where there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous or clearly wrong. Stobart, 617 So.2d at 882. Thus, "if the [factfinder's] findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." Sistler v. Liberty Mut. Ins. Co., 558 So.2d 1106, 1112 (La. 1990)
Id. at pp. 7-8; 696 So.2d at 556.
In the instant case, we observe that the workers' compensation judge adopted, almost verbatim, the arguments in defendants' post-trial memorandum. In Safeco Insurance Co. v. Farm Bureau Insurance Cos., 490 So.2d 565, 568 (La.App. 3 Cir.1986), this court stated:
Manifest error is committed when the trial court assigns as reasons for judgment the argumentative brief of counsel, making it obvious it has not adequately weighed the evidence before it. Cashio v. Holt, 425 So.2d 820 (La.App. 5th Cir.1982), writ denied 430 So.2d 94 (La.1983). We find that defendants' post trial brief to the trial court was not only highly argumentative but did not recite all of the relevant facts and law.
Notwithstanding this language in Safeco, we believe that the workers' compensation judge's reasons are subject to a manifest error review. If the workers' compensation judge erred, the error was not in simply adopting defendants' arguments, but in adopting those arguments that are not supported by the record.

b. Forfeiture of Benefits
The requirements for forfeiture of benefits under La.R.S. 23:1208 are (1) a false statement (2) that is willfully made (3) for the purpose of obtaining or defeating any benefit or payment under the provisions of the workers' compensation law. Resweber v. Haroil Constr. Co., 94-2708 (La.9/5/95); 660 So.2d 7. "Forfeiture is a harsh remedy. Thus, statutory forfeiture must be strictly construed." Wise v. J.E. Merit Constructors, Inc., 97-684, p. 7 (La.1/21/98); 707 So.2d 1214, 1218.
The workers' compensation judge first based his decision for forfeiture on Benoit's false swearing conviction. In his reasons for judgment, the workers' compensation judge equated the guilty plea with a false statement. Concerning the taped conversation, his reasons (adopted from the defendants' post-trial memorandum) state:
At trial, claimant testified he at no time told Mr. Short to lie on his behalf, however, a review of the transcript indicates that claimant was intent upon "getting back" at his employer and obtaining from Frank's Casing Crew and Rental Tools all he could.... A review of that transcript shows claimant, with Mr. Short, was going to do whatever was necessary to get money from defendant.
In that taped conversation, Benoit did offer Short money in exchange for a statement. At one point, Benoit tells Short that Short is "guaranteed" $5,000. Later, Benoit states: "If I can get over a million dollars... I'm going to give you a hundred thousand." However, as this excerpt illustrates, Benoit did not ask Short to He for him:
CS: Yeah, so all she wants to know, is so, it's kind of like me just changing my statement, giving, you know, giving...
MB: You know, what you told Frank's?
CS: Yeah.
MB: Tell her the same thing.
CS: Yeah.
MB: How the truck was when you tried to and stop it, it didn't want to stop it, just tell her the same thing. You *767 ain't got to lie about nothing. You know, just tell her the truth, man, how Frank's, you know, messed the truck up and sh-t, and how they did wrong, like we couldn't use no other truck, right, we had to keep using that one.
Even if Benoit's guilty plea was evidence of a false statement wilfully made, the statement must have been made for the purpose of obtaining workers' compensation benefits. When Benoit and Short had this conversation in January of 1995, Benoit was still receiving temporary total disability benefits. Apparently, Short had already given a statement about the accident for the workers' compensation claim. The statement that Benoit sought to procure through this conversation was for his intentional tort suit. He wanted Short to testify about the truck's condition at the time of the accident and Frank's knowledge thereof. However, whether or not Frank's conduct was negligent or intentional had no relevance to Benoit's continued receipt of workers' compensation benefits. We must, therefore, conclude that the workers' compensation judge erred in ordering forfeiture of benefits based upon Benoit's guilty plea or the taped conversation. Benoit's scheme, however unacceptable, was not concocted to obtain or defeat workers' compensation benefits, and, hence, it cannot support a judgment of forfeiture of benefits.
The workers' compensation judge also found that Benoit misrepresented to Dr. Olivier that he did not injure his back in the second accident. Dr. Olivier's notes about that accident state: "[H]e was involved in a motor vehicle accident, kind of got shook up and hurt his jaw. He is supposed to see a dentist regarding that. The patient's back has not been injured by the accident according to the patient." In his deposition, Dr. Olivier testified that he did not find anything in this examination that indicated a new injury; he also testified that his notes on that date show he did not observe low back spasm. At trial, Benoit testified that he believed the second accident aggravated his back condition because "it was hurting more," but that physicians in the emergency room told him otherwise. Benoit also reported the second accident to Dr. Cole, whose notes reflect: "He feels this [accident] aggravated his back problem. He also experienced pain in his legs. He underwent x-rays which did not reveal any new problem."
Defendants did not introduce any medical records showing a new injury in June of 1995. In fact, the record contains scant information about the second accident. Without more, we find defendants failed to prove that Benoit made false statements about this accident.
The workers' compensation judge also found that Benoit testified untruthfully about his physical abilities. When asked whether or not he could wash his car, do his laundry, or cut his grass, Benoit said that he could not. He then added: "If I would try to do those things and with the pain, you know, maybe I can succeed in doing it; but I'd pay for it after." Beard, Frank's security director, later testified that he observed Benoit wash his car for three hours on January 7, 1995. Beard took many still pictures, five of which were introduced into evidence. In his reasons for judgment, the workers' compensation judge found Benoit misrepresented his physical abilities with the intent to prolong the payment of compensation.
In Bolden v. Jeffrey's Steel Co., Inc., 96-518 (La.App. 5 Cir. 12/11/96); 684 So.2d 1102, writ denied, 97-0418 (La.3/27/97); 692 So.2d 399, the court found that a video of the claimant walking without a cane and driving to the corner convenience store did not contradict his testimony that "at its worse" his pain was so severe that he needed a walking cane and could not drive. In Trapani v. Domino Sugars, 95-2529 (La.App. 4 Cir. 6/5/96); 675 So.2d 1211, the plaintiff testified that her rotator cuff tendinitis and bursitis prevented her from doing housework, yard work, or anything that involved use of her arm. Defendants, however, produced a video of the plaintiff performing vigorous yard work for one hour approximately six months before trial. The court found that the workers' compensation judge should have ordered the forfeiture of the plaintiff's benefits, considering that "the plaintiff swore that she was and had been since the accident unable *768 to perform any work because of the pain and limitations in her arm."
In the instant case, the photographs of Benoit washing his car were taken in January of 1995, two years before they were introduced at trial. At the time the photographs were taken, Benoit had recently been released to light duty work. On his first doctor's visit after this incident, on January 13, 1995, Dr. Olivier noted: "The patient is doing relatively well.... In terms of his overall condition, I think he has probably reached the maximum medical benefit." Two months later, however, Benoit reported increased pain in the right iliac crest. Dr. Olivier observed, "He is seemingly getting worse rather than better." An MRI in May of 1995, before the second accident, revealed postoperative fibrosis and a small, contained residual bulge at L5-S1. Based on these findings, Dr. Olivier again restricted Benoit from any work.
As shown by the medical records, the photographs of Benoit were taken when he achieved his best medical results. The records also document objective findings producing a marked change in condition. Those findings and worsening symptoms were documented before Benoit's second accident. After reviewing the entirety of the medical records and Benoit's trial testimony, we do not find that the production of those photographs so contradict Benoit's testimony as to warrant forfeiture of his benefits.

c. Supplemental Earnings Benefits
In Banks, 96-2840 at pp. 8-9; 696 So.2d at 556, the supreme court explained each party's burden of proof in an SEB claim, as well as the jurisprudential interpretation of each step:
"The purpose of SEBs is to compensate the injured employee for the wage earning capacity he has lost as a result of his accident." Pinkins v. Cardinal Wholesale Supply, Inc., 619 So.2d 52, 55 (La.1993). An employee is entitled to receive supplemental earnings benefits (SEBs) if he sustains a work-related injury that results in his inability to earn ninety percent (90%) or more of his average pre-injury wage. LA.REV.STAT.ANN. § 23:1221(3)(a) (West Supp.1997). Initially, the employee bears the burden of proving, by a preponderance of the evidence, that the injury resulted in his inability to earn that amount under the facts and circumstances of the individual case. Freeman, 93-1530 at p. 7, 630 So.2d at 739. "Th[is] analysis is necessarily a facts and circumstances one in which the court is mindful of the jurisprudential tenet that workers' compensation is to be liberally construed in favor of coverage." Daigle v. Sherwin-Williams Co., 545 So.2d 1005, 1007 (La.1989).
Once the employee's burden is met, the burden shifts to the employer who, in order to defeat the employee's claim for SEBs or establish the employee's earning capacity, must prove, by a preponderance of the evidence, that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in his or the employer's community or reasonable geographic region. LA.REV.STAT.ANN. § 23:1221(3)(c)(i) (West Supp.1997); Daigle, 545 So.2d at 1009. Actual job placement is not required. Romero v. Grey Wolf Drilling Co., 594 So.2d 1008, 1014-15 (La.App. 3d Cir.1992). The amount of SEBs is based upon the difference between the claimant's pre-injury average monthly wage and the claimant's proven post-injury monthly earning capacity. LA.REV.STAT.ANN. § 23:1221(3)(a) (West Supp.1997).
(Emphasis added.)
In finding that Benoit failed to prove that he was unable to earn ninety percent of his pre-injury wages, the workers' compensation judge cited Texaco, Inc. v. Foreman, 96-1434 (La.App. 3 Cir. 4/2/97); 692 So.2d 684, writ denied, 97-1617 (La.10/3/97); 701 So.2d 206, stating that "the claimant's subjective belief that he could not work would not satisfy the clear and convincing standard required to receive supplemental earnings benefits." (Emphasis added.) However, as shown in Banks, the claimant's burden at this step in the SEB analysis is proof by a preponderance of the evidence. See also Dupree v. Ace Home & Auto, 96-745 (La.App. 3 Cir. 12/26/96); 685 So.2d 683, writ denied, *769 97-0283 (La.3/27/97); 692 So.2d 393, where we held that a similar error warranted a de novo review of the record.
The workers' compensation judge also discounted Dr. Olivier's opinion because of the alleged misrepresentations about the June 1995 accident. The workers' compensation judge stated in his reasons (again adopting language from defendants' memorandum) that without Dr. Olivier's opinion "[t]here is very little, if any, objective evidence upon which the claimant may show he is physically impaired from work."
This characterization of the evidence ignores that Dr. Olivier considered Benoit permanently precluded from working at his former job as early as February of 1995, four months before the second accident in June of 1995. Additionally, Dr. Gidman, although believing Benoit capable of medium work, placed significant restrictions on Benoit's physical activities, including a ten percent impairment of the body as a whole and lifting limited to a one-time, isometric lifting of no more than forty to fifty pounds and occasional lifting of ten to fifteen pounds.
With an average weekly wage of $340, Benoit was earning well above minimum wage. After considering the restrictions imposed by both doctors, Benoit's age (twenty-one) at the time of the accident, and his limited education of only a GED (completing tenth grade), we find that Benoit did meet his burden of proving by a preponderance of the evidence that he cannot earn ninety percent of his former wages. See Henton v. Walker & Wells Contractors, Inc., 25,821 (La.App. 2 Cir. 5/4/94); 637 So.2d 672, writ denied, 94-1491 (La.9/23/94); 642 So.2d 1295.
We now consider whether defendants discharged their burden of proving that Benoit is physically capable of performing a certain job that was offered or available to him. An employer meets its burden of proving job availability by establishing, at a minimum, the following:
(1) the existence of a suitable job within claimant's physical capabilities and within claimant's or the employer's community or reasonable geographic region;
(2) the amount of wages that an employee with claimant's experience and training can be expected to earn in that job; and
(3) an actual position available for that particular job at the time that the claimant received notification of the job's existence.

By "suitable job," we mean a job that claimant is not only physically capable of performing, but one that also falls within the limits of claimant's age, experience, and education, unless, of course, the employer or potential employer is willing to provide any additional necessary training or education.
Banks, 96-2840 at pp. 11-13; 696 So.2d at 557 (footnote omitted) (emphasis added).
On September 22, 1995, McNabb mailed Benoit a list of thirty-six jobs that McNabb obtained from Job Service listings and newspaper advertisements. McNabb admitted that he did not contact any of the employers before sending the list to Benoit, although he believed that those jobs were within Benoit's physical limitations. Dr Olivier did not approve any of the jobs until October 31, 1996. Benoit, however, was not notified of which jobs Dr. Olivier approved until January of 1997.
We find that McNabb's services, although clearly not "sham rehabilitation," did not fulfill the three requirements of Banks so as to support defendants' termination of benefits in April of 1995. In particular, we note that McNabb failed to confirm that the jobs on the original list were within Benoit's restrictions and that McNabb did not supply Benoit with a list of approved jobs until nine months after benefits were terminated. Compare with Reed v. Direct Installers, 95-1684, p. 7 (La.App. 4 Cir. 1/31/96); 669 So.2d 529, 534 (where the vocational rehabilitation counselor "included each of the jobs on the list because she verified Reed's ability to perform the requirements of the job and she contacted all the potential employers and verified the availability of the job ....") and Blanchard v. Federal Express Corp., 95-349, p. 5 (La. App. 1 Cir. 11/9/95); 665 So.2d 11, 14 (where counselor "attempted for an entire year to direct plaintiff" to suitable jobs). The record also contains wage information about only one of the four approved jobs, the fire patrol *770 position, but it is unclear whether that is a full-time or a part-time job. Additionally, that position was not separately identified on the original list supplied to Benoit. We, therefore, order reinstatement of Benoit's supplemental earnings benefits at a zeroearnings base.

d. Penalties and Attorney Fees
Benoit also seeks penalties and attorney fees, contending that defendants failed to reasonably controvert his claim and arbitrarily terminated his benefits. We disagree, considering that defendants did not have the guidance of Banks in April of 1996 when benefits were terminated. Before Banks, the courts were divided on an employer's burden of proving job availability, requiring a showing that varied from general employment availability to the existence of a particular job. We decline to penalize defendants, in effect, because of the law's uncertainty at that time.

Decree
For the above reasons, the judgment of the Office of Workers' Compensation is reversed, and claimant's supplemental earnings benefits are reinstated at a zero-earnings base. Costs of this appeal are assessed to defendants-appellees.
REVERSED AND RENDERED.