# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 03-515


SHANNON DOUGLAS

VERSUS

GREY WOLF DRILLING COMPANY


\*\*\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 2,
PARISH OF RAPIDES, NO. 01-6100,
JAMES L. BRADDOCK, WORKERS' COMPENSATION JUDGE


\*\*\*\*\*\*\*\*\*\*\*\*


## MICHAEL G. SULLIVAN
## JUDGE


\*\*\*\*\*\*\*\*\*\*\*\*


Court composed of Billie Colombaro Woodard, Michael G. Sullivan, and Billy H. Ezell, Judges.


**AFFIRMED.**


James D. Hollier
Gregory A. Koury
Laborde & Neuner
Post Office Drawer 52828
Lafayette, Louisiana 70505-2828
(337) 237-7000
Counsel for Defendant/Appellant:
    Grey Wolf Drilling Company

Shannon Douglas
In Proper Person
30 Herman Thompson Road
Pitkin, Louisiana 70656
(318) 634-5278
Counsel for Plaintiff/Appellee:
    Shannon Douglas

SULLIVAN, Judge.

Grey Wolf Drilling Company (Grey Wolf) appeals a judgment awarding a former floorhand, Shannon Douglas, $2,328.00 in temporary total disability benefits for six weeks and $6,073.40 in medical expenses for the repair of a right inguinal hernia that Mr. Douglas alleged he sustained in a work-related accident. For the following reasons, we affirm.

**Discussion of the Record**

Mr. Douglas, a *pro se* litigant, testified that he felt something pull in his right groin area as he squatted to catch a "lift sub" pipe that began to roll from the rig's rotary table between midnight and 2:00 a.m. on May 7, 2001. He explained that he completed his shift, which ended at 6:00 a.m. on May 7, without reporting the incident because he believed that he only sustained a pulled muscle that would heal. However, he stated that he later found a lump in his lower belly while showering after he had driven two and a half hours from the rig to his home. He further described having to stop his vehicle several times so that he could relieve a burning pain by standing up and walking around as he drove back to the rig for his next shift, which began at 6:00 p.m. on May 7. He testified that he was only able to work approximately two hours into that shift when he reported that he was in pain to the driller, Leroy Lejeune. Mr. Lejeune then referred him to the toolpusher, Joel Kirkpatrick.

The substance of the conversation between Mr. Douglas and Mr. Kirkpatrick is in dispute. Mr. Douglas testified that he told Mr. Kirkpatrick of the "lift sub" incident that occurred during the previous shift, but that he offered to file any medical claims under his health insurance plan because he was concerned that a safety bonus for all crew members would be in jeopardy if he reported a "lost-time" accident. Because he was scheduled to go on "days off" the next day, he proposed to Mr. Kirkpatrick that he take an additional week off to recover from surgery before

returning to work. According to Mr. Douglas, Mr. Kirkpatrick agreed to this plan and assured him that he would have a job when he recovered. When Mr. Douglas returned to the rig to inquire about his job three weeks later, after he had undergone the hernia repair, he learned that he had been terminated the day after his last shift because he had not been with the company long enough to take a week off.

Mr. Kirkpatrick, however, denied any knowledge of a work-related accident. He testified that Mr. Douglas explained that he needed surgery because he aggravated a pre-existing hernia while performing his "manly duties," which Mr. Kirkpatrick understood to mean having sex with his wife. Although he acknowledged a discussion about Mr. Douglas still having his job when he returned, Mr. Kirkpatrick denied any agreement about not reporting a work-related accident to protect the crew's safety bonuses. Mr. Lejeune, the driller, testified that he did not see Mr. Douglas catch a falling "lift sub" and that Mr. Douglas told him he may have gotten a hernia from an off-duty accident that occurred a few weeks earlier.

On May 8, 2001, Mr. Douglas sought treatment for the hernia from Dr. James Oglesby, who recommended an immediate referral to a surgeon, Dr. Patrick Savoy. According to Dr. Oglesby's records, Mr. Douglas reported that he felt the hernia "rip about two days ago" and that it "really started hurting" during intercourse. After an initial visit with Dr. Savoy on May 9, 2001, Mr. Douglas underwent repair of a large, right inguinal hernia the next day, May 10, 2001. Dr. Savoy's handwritten notes contained the notation "works in oilfield—large RIH for years, recently symptomatic." The typewritten report of that visit, however, varies slightly, stating: "The patient has worked in the oil field for many years with a large right inguinal hernia but has just recently become symptomatic."

2

Mr. Douglas testified that he underwent a hernia repair as an infant, but he denied that he had similar problems before May 7, 2001. He testified that he began working for Grey Wolf, which was his first job in the oilfield, about seven months before the accident and that he had to pass a physical as a condition of employment. His wife testified that she was not aware of her husband having a hernia until he showed her the bulge that appeared after his shift on May 7, 2001.

At the close of evidence, the workers' compensation judge (WCJ) found that Mr. Douglas had proved his case by a preponderance of the evidence, citing the objective evidence of a hernia, the corroboration in the medical records as to the timing of his symptoms, and an inconsistency in the testimony of Grey Wolf's employees, in that one said Mr. Douglas told him he got a hernia during sexual intercourse whereas the other stated that Mr. Douglas reported an earlier, off-duty accident. The WCJ also commented favorably on the credibility of both Mr. Douglas and his wife. Specifically, the WCJ stated that he believed Mr. Douglas when he testified (1) that he did not initially think he was seriously injured, (2) that he believed his job was in jeopardy if he reported an accident, and (3) that he believed reporting a "lost-time" accident would have placed the crew's safety bonuses at risk. The WCJ, however, did not award any penalties, based upon the failure to report the accident and the vagueness in the medical records.

**Burden of Proof**

In its first assignment of error, Grey Wolf argues that the WCJ should have required Mr. Douglas to prove his case by "clear and convincing" evidence because his testimony was the only evidence supporting the occurrence of a work-related accident. In its second assignment of error, Grey Wolf argues that, even if "preponderance of the evidence" was the appropriate standard, Mr. Douglas'

3

testimony was insufficient to discharge that burden because other evidence discredited it and it was not corroborated by the circumstances following the accident.

Grey Wolf cites *Provost v. Transportation Insurance Co.*, 524 So.2d 800 (La.App. 3 Cir. 1988), for authority that a claimant's testimony must be clear and convincing if it is the only evidence offered in support of an accident. However, *Provost* was based upon a line of cases that the supreme court expressly repudiated in *Bruno v. Harbert International Inc* ., 593 So.2d 357, 364 (La.1992) (emphasis added):

> [W]e find the appellate court's reliance on the fact that plaintiff was the only witness entirely misplaced. As we stated in *West* [*v. Bayou Vista Manor, Inc.*, 371 So.2d 1146 (La.1979)], it is improper for a court to impose a higher standard of proof on a worker simply because she was the only witness, as to do so "in effect place[s] a duty upon this compensation claimant to prove her case greater than that required by the jurisprudence." *Id.* at 1150. Significantly, the Third Circuit did just that by stating as a rule, based upon a string cite of its own decisions, that "where the plaintiff's testimony is the sole evidence, it must be clear and convincing." . . . *We find this statement to be in direct conflict with West, supra, and to be legally incorrect* . As we held in *West, supra*, the worker's burden of proof, *even if the worker is the sole witness of the accident*, is by a preponderance of the evidence.

In *Bruno*, 593 So.2d at 361 (citations omitted), the supreme court explained:

A worker's testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident; and (2) the worker's testimony is corroborated by circumstances following the alleged incident. Corroboration of the worker's testimony may be provided by the testimony of fellow workers, spouses or friends. Corroboration may also be provided by medical evidence.

"The trial court's determinations as to whether the worker's testimony is credible and whether the worker has discharged his or her burden of proof are factual determinations not to be disturbed on review unless clearly wrong or absent a showing of manifest error." *Id.* In *Banks v. Industrial Roofing & Sheet Metal Works, Inc.*, 96-2840, pp. 7-8 (La. 7/1/97), 696 So.2d 551, 556 (citations omitted) (alteration in

4

original), the supreme court explained the manifest error standard of review as follows:

> In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Where there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous or clearly wrong. Thus, "if the [factfinder's] findings are reasonable in light of the record received in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently."

In the present case, the WCJ found that Mr. Douglas' testimony was corroborated by his wife and by medical records. Although the WCJ characterized the medical records "vague or ambiguous," he found that they corroborated Mr. Douglas' version of sustaining a hernia two days earlier that later became painful during sexual intercourse rather than the employer's claim that the sexual intercourse was the cause of the hernia. As to Mr. Douglas' failure to report the accident, the WCJ found his explanation—that he did not believe he was seriously injured—to be credible given the aches and pain that heavy oilfield work can cause. The WCJ also believed Mr. Douglas when he testified that the crew's safety bonuses would be at risk should he report a "lost-time" accident. In contrast, the WCJ emphasized that Grey Wolf's employees testified inconsistently regarding what Mr. Douglas told them as to cause of his hernia. Based upon the above, we find no error that Mr. Douglas proved that he sustained a work-related accident by a preponderance of the evidence.

**Failure to File a Pre-Trial Statement**

In its third assignment of error, Grey Wolf argues that the WCJ erred in allowing Mr. Douglas to present any evidence, either testimonial or documentary, because he failed to file a pre-trial statement as required by the Office of Workers' Compensation Hearing Rules 6005 and 6007 (La.Admin.Code Title 40, Part I, Chapter

5

60, §§ 6005 and 6007). In overruling Grey Wolf's objection to Mr. Douglas' evidence, the WCJ commented that it was evident the employer had conducted its own investigation of the claim and was, therefore, well aware of the information available to both sides.

Hearing Rule 6005(A) requires each party to file a pre-trial statement at least ten days before the pre-trial conference. Hearing Rule 6007(B) states that *amendments* to the pre-trial statement shall only be by written motion and for good cause shown. (The rule does not list the consequences for failing to file a pre-trial statement.) Hearing Rule 6201 provides that only those issues listed in the pre-trial statements shall be litigated at trial, except by written order of the WCJ for good cause or by agreement of the parties.

Louisiana Revised Statutes 23:1317(A) (emphasis added) provides, in part:

> *The workers' compensation judge shall not be bound by technical rules of evidence or procedure* other than as herein provided, but all findings of fact must be based upon competent evidence . . . . The workers' compensation judge shall decide the merits of the controversy as equitably, summarily, and simply as may be.

In *Meche v. Foremost Management Corp.*, 93-1390, p. 5 (La.App. 3 Cir. 5/4/94), 640 So.2d 585, 587, *writ denied*, 96-152 (La. 3/15/96), 669 So.2d 429 (quoting *Keyes v. Rockwood Ins. Co.,* 502 So.2d 223, 228 (La.App. 3 Cir. 1987), we stated that La.R.S. 23:1317 "reflects the legislature's intent, in compensation cases, to materially relax evidentiary and procedural rules and subordinate procedural considerations to the discovery of the truth and the protection of substantive rights." Additionally, as explained in *Vernon v. Wade Correctional Institute*, 26,053, p. 5 (La.App. 2 Cir. 8/19/94), 642 So.2d 684, 688 (emphasis added), "[t]he theory inherent in pretrial procedure is *the avoidance of surprise* and the allowance of *the orderly disposition of the case*."

6

In *Starkman v. Munholland United Methodist Church*, 97-661 (La.App. 5 Cir. 1/14/98), 707 So.2d 1277, *writ denied*, 98-400 (La. 3/27/98), 716 So.2d 891, the court found that the claimant's failure to file a pre-trial statement supported the WCJ's exclusion of the testimony of a witness, a close friend of the claimant's. However, the claimant did present other evidence in support of her claim, including her testimony, medical records, and physicians' depositions, even though she did not file a pre-trial statement.

In the present case, Mr. Douglas offered his testimony and that of his wife, as well as four exhibits: an earnings statement prepared by the employer; incident verification forms generated by the employer; and medical insurance claims and medical records that the employer provided to him. Mr. Douglas also proffered a drug testing custody and control form that was apparently prepared at the employer's request. We find no abuse of the WCJ's discretion in permitting Mr. Douglas to proceed with his case, given that the employer had taken his deposition and that his documentary evidence was either generated by or otherwise available to his employer.

**Forfeiture of Benefits and Restitution**

In its fourth assignment of error, Grey Wolf argues that the trial court erred in denying its claims for forfeiture of benefits under La.R.S. 23:1208(E) and for restitution of $17,032.09 in investigation expenses under La.R.S. 23:1208(D). Additionally, Grey Wolf argues that we should conduct a *de novo* review of its forfeiture and restitution claims under *Bloxom v. Bloxom*, 512 So.2d 839 (La.1987) because the trial court impliedly denied them without comment in its oral reasons for judgment.

In *Bloxom*, 512 So.2d 839, the supreme court recognized that a trial court's factual findings may not be entitled to the usual deference owed them if the trial

court's reasons do not articulate the theory or evidentiary facts upon which its conclusions are based and if the trial court's path may not be reasonably discerned from the record. However, in *Leal v. Dubois*, 00-1285, p. 4 (La. 10/13/00), 769 So.2d 1182, 1185, the supreme court emphasized that deference is still owed a trial court's decision "even if that decision is of less than ideal clarity, if the trial court's path may reasonably discerned, such as when its findings, reasons and exercise of discretion are necessarily and clearly implied by the record." In *Leal*, 769 So.2d 1182, the trial court's written reasons clearly implied that it did not find the plaintiff to be a credible witness, and the trial court stated in denying the plaintiff's motion for a new trial that it did not believe her testimony. Finding that this court wrongly applied *Bloxom* in reversing the trial court's decision, the supreme court stated: "Under these circumstances, the court of appeal erred in failing to give deference to the district court's factual findings, *which were unequivocally based on a credibility determination*." *Id.* at 1185 (emphasis added).

In his oral reasons, the WCJ repeatedly stated that he believed Mr. Douglas' testimony. In particular, the WCJ found Mr. Douglas credible when he stated that he initially did not believe he was seriously injured and that he believed reporting a "lost-time" accident might jeopardize his job as well as safety bonuses for the other crew members. The WCJ's reasons for ruling clearly imply that he denied the fraud and restitution claims based upon his favorable assessment of Mr. Douglas' credibility. Accordingly, we find that the *Bloxom* standard does not apply.

Louisiana Revised Statutes 23:1208(A) provides, in part: "It shall be unlawful for any person, for the purpose of obtaining . . . any benefit or payment under the provisions of this Chapter . . . to willfully make a false statement or representation."

"The only requirements for forfeiture of benefits under Section 1208 are that (1) there is a false statement or representation, (2) it is willfully made, and (3) it is made for the purpose of obtaining or defeating any benefit or payment." *Resweber v. Haroil Constr. Co.*, 94-2708, 94-3138, p. 7 (La. 9/5/95), 660 So.2d 7, 12.

However, because statutory forfeiture is a harsh remedy, it must be strictly construed. *Benoit v. Frank's Casing Crew*, 97-1522 (La.App. 3 Cir. 5/20/98), 713 So.2d 762, *writ denied*, 98-1697 (La. 10/9/98), 726 So.2d 31. Whether an employee has forfeited his right to workers' compensation benefits is a question of fact that will not be disturbed on appeal absent manifest error. *Smith v. Quarles Drilling Co.*, 99-171 (La.App. 3 Cir. 6/2/99), 741 So.2d 829, *writ denied*, 99-1949 (La. 10/8/99), 751 So.2d 227.

Grey Wolf argues that Mr. Douglas falsely testified that he told his co-workers and his doctors that his injury was work-related. The WCJ, however, found that the co-workers testified inconsistently and that the medical records were "ambiguous or vague," with discrepancies between the handwritten and typewritten reports. We find no error in the WCJ's conclusion that Mr. Douglas did not testify falsely for the purpose of obtaining workers' compensation benefits.

Grey Wolf also argues that Mr. Douglas forfeited his right to workers' compensation benefits when he completed an "Incident Verification Statement Form" at the end of his May 7, 2001 shift confirming that he did not have "an incident" during that work period. On the form, which must be completed by every rig crew member after every shift, the employee is asked to "CONFIRM" that he "DID" or "DID NOT" have "an incident" during that shift. The form also contains a warning that the failure to answer truthfully may result in a denial of any right to workers' compensation benefits, including medical treatment and expenses. The WCJ

considered the use of the term "incident" to be ambiguous, noting by analogy the difficulty that the courts have in defining what may be considered an "accident." Further, the WCJ believed Mr. Douglas when he testified that he did not initially think anything significant had happened due to the nature of heavy work in the oilfield. We find no error in the denial of a forfeiture claim based upon the completion of this form.

## Decree

For the above reasons, the judgment of the Office Workers' Compensation is affirmed. Costs of this appeal are assessed to Appellant, Grey Wolf Drilling Company.

**AFFIRMED.**