STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

04-209

EUGENE WELLS

VERSUS

DUNHAM PRICE, INC.

************

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 3,
PARISH OF CALCASIEU, NO. 00-7231,
SAM LOWERY, WORKERS' COMPENSATION JUDGE

************

MICHAEL G. SULLIVAN
JUDGE

************

Court composed of John D. Saunders, Michael G. Sullivan, and Elizabeth A. Pickett, Judges.

**AFFIRMED.**

Scott J. Pias
Attorney at Law
522 Alamo Street
Lake Charles, Louisiana 70601
(337) 436-1288
Counsel for Plaintiff/Appellee:
    Eugene Wells

David S. Pittman
Rabalais, Unland & Lorio
5100 Village Walk, Suite 300
Covington, Louisiana 70433
(985) 893-9900
Counsel for Defendant/Appellant:
    Dunham Price, Inc.

SULLIVAN, Judge.

Dunham Price, Inc. appeals an award of workers' compensation benefits in favor of Eugene Wells. For the following reasons, we affirm.

**Procedural History**

This litigation stems from Mr. Wells' allegation that he sustained a work-related accident on September 8, 1999, while driving a cement truck for Dunham Price. Dunham Price initially filed a disputed claim, contending that Mr. Wells did not suffer a work-related accident and/or that any injury or disability was not causally related to his employment. Mr. Wells subsequently filed his own disputed claim, seeking indemnity benefits, medical expenses, penalties, and attorney fees.

Dunham Price then filed a motion for summary judgment, which the workers' compensation judge (WCJ) denied. However, in that judgment, the WCJ also awarded Mr. Wells medical and indemnity benefits. Upon Dunham Price's appeal, we affirmed the denial of summary judgment, but we reversed the award of benefits as premature and remanded for trial on the merits. *Dunham Price, Inc. v. Wells*, 01-712, 01-713 (La.App. 3 Cir. 10/31/01), 799 So.2d 828. On remand after a trial, WCJ Constance Abraham-Handy ruled against Mr. Wells. On appeal of that judgment, this court, in an unpublished ruling, again remanded, ordering a new trial because the record could not be completed due to the deaths of both the WCJ and the court reporter. *Wells v. Dunham Price, Inc.*, 02-960 (La.App. 3 Cir. 8/20/02). After a second trial, WCJ Sam Lowery awarded Mr. Wells medical and indemnity benefits, but denied his claim for penalties and attorney fees. This is the judgment that is the subject of the present appeal.

## Discussion of the Record

At the second trial, Mr. Wells testified that, while driving a cement truck through rough terrain on September 8, 1999, his seat "bottomed out" after he struck something in the road. He described the immediate onset of a sharp, burning pain that shot down his left leg all the way to his foot. He also explained that, because he was in so much pain, he could barely continue driving and that, when he reached his destination, he had to ask another driver, Thomas Hockman, to unload his truck. Mr. Hockman confirmed that the drive had been over rough terrain and that he did unload Mr. Wells' truck for him. Mr. Hockman testified that Mr. Wells did not state that he had been in an accident while driving, but it appeared to Mr. Hockman that Mr. Wells was hurt.

According to Mr. Wells, he reported the incident that day to the dispatcher, David Joshlyn (who was not called to testify), and later to the office manager, Melanie Conner. Mr. Wells remained off work for seven weeks, then he returned to work at light duty through February 26, 2000, when his pain prevented him from working any more. He was diagnosed with a herniated disc and underwent surgery in April of 2000. He returned to work full time for another company on May 5, 2001.

John Ardoin, the truck foreman, testified that other employees informed him that Mr. Wells had left work on September 8, 1999, because his back was hurting. Mr. Ardoin stated that he next saw Mr. Wells about a week later, when Mr. Wells asked him to file a workers' compensation claim. Mr. Ardoin testified that he told Mr. Wells he would not file a claim because more than seventy-two hours had passed since the alleged accident and, further, that Mr. Wells told him he was not injured at

2

work. Mr. Ardoin stated that Mr. Wells had complained of back problems in the past and that he had previously provided Mr. Wells with a support belt.

Ms. Conner, the office manager, testified that Mr. Wells asked her to file a workers' compensation claim sometime between November of 1999 and February of 2000. She explained that she refused his request because he did not have a "specific injury" and that she told him he should use his health insurance for his medical expenses. Ms. Conner testified that she believed Mr. Wells was working at his home because she knew of concrete tickets showing deliveries at his address on days when he had called in sick. Ms. Conner also testified that she later prepared a report stating that Mr. Wells told her he was not injured at work, but she did not know where that report was at the time of trial. Called to the stand on rebuttal, Mr. Wells testified that his grandson did all of the concrete work at his home and that he did not say that his injury was not work-related.

Mr. Wells was treated by Dr. Randall Wagman on September 8, 1999 for complaints of low back pain and pain in the left buttock. Dr. Wagman's records contain the notation, "pain in lower back x 1½ weeks." An MRI of September 14, 1999 revealed a "large herniated disc fragment" at L5-S1, with degenerative disc disease and diffuse bulging without herniation from L2-3 to L4-5. Dr. Wagman referred Mr. Wells to an orthopedic surgeon, Dr. Dale Bernauer, who performed a lumbar laminectomy, discectomy, and fusion on April 25, 2000. On March 27, 2000, Dr. Bernauer issued a letter stating, "[Mr. Wells] has a disc protrusion with extrusion of disc at L5-S1. This gentleman has a long history of driving a cement truck. This certainly could be a contributing cause for his disc herniation."

3

At trial, Mr. Wells testified that he had been previously seen by other physicians for back problems. On cross-examination, he acknowledged that he had been seen by Dr. Cormier, a chiropractor, for low back pain with leg pain on May 15, 1995 and on January 4, 1999, and by Dr. Lebato, of Sulphur, Louisiana, for "lower back pain going down to leg (left side)" on January 8, 1999. He also testified that he underwent a lumbar MRI in January of 1999. However, the MRI results and the records of Drs. Cormier and Lebato were not introduced into evidence.

Ruling in favor of Mr. Wells, the WCJ stated that his judgment was based upon credibility determinations as well as a presumption of causation. On appeal, Dunham Price argues that the WCJ erred (1) in finding that Mr. Wells sustained an accident in the course and scope of his employment; (2) in awarding temporary total disability benefits in the absence of clear and convincing evidence; (3) in finding that Mr. Wells' medical problems were caused by a work-related accident; and (4) in rejecting its claim for forfeiture of benefits under La.R.S. 23:1208.

### Temporary Total Disability Benefits

Dunham Price argues that Mr. Wells failed to prove that he sustained an accident, that he suffered a work-related injury, and that he is entitled to temporary total disability benefits by clear and convincing evidence. Dunham Price further argues that we should review this case *de novo* because the WCJ improperly applied a presumption of causation in favor of Mr. Wells.

To recover workers' compensation benefits, a claimant must establish a "personal injury by accident arising out of and in the course of his employment." La.R.S. 23:1031(A). An "accident" is defined in La.R.S. 23:1021(1) as "an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly

4

or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration." The claimant bears the burden of establishing a work-related accident by a preponderance of the evidence. *Bruno v. Harbert Int'l, Inc.*, 593 So.2d 357 (La.1992); *Douglas v. Grey Wolf Drilling Co.*, 03-515 (La.App. 3 Cir. 11/5/03), 858 So.2d 830. Where, as in the present case, the alleged accident is unwitnessed:

> [a] worker's testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the alleged incident. Corroboration of the worker's testimony may be provided by the testimony of fellow workers, spouses or friends. Corroboration may also be provided by medical evidence.

*Bruno*, 593 So.2d at 631 (citations omitted).

The claimant must also establish a causal link between the work-related accident and the claimed disability. *Walton v. Normandy Village Homes Ass'n, Inc.*, 475 So.2d 320 (La.1985). A claimant with a pre-existing disease or infirmity is not disqualified from receiving benefits if he can prove that the workplace accident aggravated, accelerated, or combined with the pre-existing condition to produce the claimed disability. *Tate v. Cabot Corp.*, 01-1652 (La.App. 3 Cir. 7/3/02), 824 So.2d 456, *writ denied*, 02-2150 (La. 11/22/02), 829 So.2d 1044. "Thus, the element of causation is satisfied if the employee's work-related accident was a *factor* in bringing about the employee's disabled status." *Id.* at 461 (quoting *Rideaux v. Franklin Nursing Home*, 95-240, p. 5 (La.App. 3 Cir. 11/22/95), 664 So.2d 750, 755, *writ denied*, 95-3093 (La. 2/16/96), 667 So.2d 1058). Further:

> [t]he employee's workplace accident is presumed to have caused or aggravated [his] disability when [he] proves that: (1) before the accident, [he] had not manifested disabling symptoms; (2) commencing

5

with the accident, the disabling symptoms appeared; and (3) there is medical or circumstantial evidence indicating a reasonable possibility of causal connection between the accident and activation of the disabling condition. Once an employee establishes the presumption of a casual relationship, the employer must produce evidence and persuade the trier of fact that it is more probable than not that the injury was not caused by the work accident.

*Id.*

We will consider Dunham Price's argument concerning causation first, as its outcome could affect the standard of review applied. Factual findings in a workers' compensation case are governed by the manifest error standard of review, which requires only that the appellate court determine that the fact finder's conclusions were reasonable. *Banks v. Indus. Roofing & Sheet Metal Works, Inc.*, 96-2840 (La. 7/1/97), 696 So.2d 551. However, where one or more legal errors interdict the fact-finding process, the reviewing court should conduct a *de novo* assessment of the record. *Campo v. Correa*, 01-2707 (La. 6/21/02), 828 So.2d 502.

Dunham Price argues that the WCJ erred in applying a presumption of causation, given Dr. Wagman's medical records indicating that Mr. Wells reported back pain "x 1½ weeks" on September 8, 1999 and Mr. Wells' admission that he had previously seen a chiropractor as late as January of 1999 for back pain and left leg pain. Noting the scarcity of the medical information in the record, the WCJ stated: "This boils down to credibility. It just gets down to being able to sit and look at somebody and being able to decide who's telling the truth." The WCJ then specifically found Mr. Wells' explanation of being injured while driving the cement truck to be credible. The record before the WCJ also included Mr. Wells' testimony that the pain he felt while driving the truck was "totally different" than before in that "it was mainly all the way down to my foot this time," as well as Mr. Wells'

6

immediate inability to return to work for seven weeks. Although Dunham Price points to Mr. Wells' admission that he had previously seen a chiropractor for back and leg pain, those medical records were not introduced at trial, making it impossible for us to evaluate the severity of the previous complaints. On this record, we find no error in the WCJ's decision to apply a presumption of causation, and in his implicit conclusion that Defendant failed to rebut that presumption.

Concerning the facts of the accident, we note the corroboration provided by the co-worker, Mr. Hockman, who testified that he had to unload Mr. Wells' truck for him and that Mr. Wells appeared to be hurt upon arriving at his destination. We also note Mr. Wells' two unsuccessful attempts to report the accident, the first to Mr. Ardoin a week later and the second to Ms. Connor either on the telephone in September 1999 or between November 1999 and February 2000. Although Mr. Ardoin and Ms. Conner both testified that Mr. Wells told them he was injured elsewhere, Ms. Connor admitted she could not locate a report she prepared memorializing that conversation. In *Douglas*, 858 So.2d 830, this court found no error in the WCJ's conclusion that the claimant sustained an unwitnessed accident, notwithstanding inconsistencies in the medical records and the testimony of two co-workers that the claimant had reported to them that his injuries were not work-related. We likewise find no error in the present case, given the WCJ's specific reliance on credibility evaluations.

Concerning disability, we note that the extent of Mr. Wells' injury was not seriously disputed at trial. An MRI taken one week after the accident revealed a "large herniated disc fragment" at L5-S1, and Mr. Wells underwent a laminectomy, with discectomy and fusion, on April 25, 2000. We find no error in the WCJ's

conclusion that Mr. Wells proved his disability during the months he was off work by clear and convincing evidence as required by La.R.S. 23:1221(1)(c).

## Forfeiture of Benefits

Dunham Price next argues that the WCJ should have found that Mr. Wells violated La.R.S. 23:1208, contending that he made a "myriad of false statements" in furtherance of his claim. Specifically, Dunham Price argues that Mr. Wells' testimony that he injured himself at work is untrue, given the inconsistencies in medical records and the testimony of Mr. Ardoin and Ms. Conner that Mr. Wells told them he had not injured himself at work.

In *Douglas*, 858 So.2d at 836, we discussed La.R.S. 23:1208 as follows:

> Louisiana Revised Statutes 23:1208(A) provides, in part: "It shall be unlawful for any person, for the purpose of obtaining . . . any benefit or payment under the provisions of this Chapter . . . to willfully make a false statement or representation."

> "The only requirements for forfeiture of benefits under Section 1208 are that (1) there is a false statement or representation, (2) it is willfully made, and (3) it is made for the purpose of obtaining or defeating any benefit or payment." *Resweber v. Haroil Constr. Co.*, 94-2708, 94-3138, p. 7 (La. 9/5/95), 660 So.2d 7, 12.

> However, because statutory forfeiture is a harsh remedy, it must be strictly construed. *Benoit v. Frank's Casing Crew*, 97-1522 (La.App. 3 Cir. 5/20/98), 713 So.2d 762, *writ denied*, 98-1697 (La.10/9/98), 726 So.2d 31. Whether an employee has forfeited his right to workers' compensation benefits is a question of fact that will not be disturbed on appeal absent manifest error. *Smith v. Quarles Drilling Co.*, 99-171 (La.App. 3 Cir. 6/2/99), 741 So.2d 829, *writ denied*, 99-1949 (La. 10/8/99), 751 So.2d 227.

We find no error in the WCJ's conclusion that Mr. Wells did not commit fraud. Mr. Wells admitted his prior back problems in his deposition, at trial, and in a post-hire questionnaire. A co-worker, Mr. Hockman, provided corroboration as to the events immediately following the accident. The disputed testimony concerns whether

8

Mr. Wells told Mr. Ardoin and Ms. Connor that he did not injure himself at work. Considering the WCJ's credibility determinations and Ms. Connor's admission that she could not locate a document memorializing that conversation, we cannot conclude that the WCJ erred.

## Decree

For the above reasons, the judgment of the Office of Workers' Compensation is affirmed. Costs of this appeal are assessed to Defendant-Appellant, Dunham Price, Inc.

**AFFIRMED.**