708 So.2d 1296 (1998)
Margie SCOTT, Plaintiff-Appellee,
v.
PICCADILLY CAFETERIA, Defendant-Appellant.
No. 97-1584.
Court of Appeal of Louisiana, Third Circuit.
April 1, 1998.
*1297 Jay Anthony Pucheu, Marksville, for Margie Scott.
Mark Alan Watson, Alexandria, for Piccadilly Cafeteria.
Before WOODARD, DECUIR and PETERS, JJ.
PETERS, Judge.
This workers' compensation claim is on appeal from a judgment granting the request of the claimant, Margie Scott, to be treated by her choice of neurosurgeon, Dr. Warren Long. The employer, Piccadilly Cafeteria, appeals that judgment.

DISCUSSION OF THE RECORD
In this case, almost six years after the date of the work accident and over two and one-half years after Ms. Scott's last entitlement to supplemental earnings benefits, Ms. Scott sought authorization for treatment by a neurosurgeon and payment of penalties and attorney fees. Eight days prior to Ms. Scott's filing of this claim, we rendered an unpublished opinion denying Ms. Scott's claim for a modification of a prior workers' compensation judgment. Scott v. Piccadilly Cafeteria, 96-1606 (La.App. 3 Cir. 4/2/97); 692 So.2d 49. In that opinion, we set forth the following facts. On April 18, 1991, Ms. Scott injured her lower back while lifting a pan in the course and scope of her employment with Piccadilly. Temporary total disability benefits were paid through September 9, 1993. At the initial trial, the issue was the nature and extent of Ms. Scott's disability, if any, after September 9, 1993. The workers' compensation judge found that Ms. Scott had the ability to perform a job that was available with Piccadilly and rendered judgment awarding supplemental earnings benefits from the time benefits were terminated through August 2, 1994, the time the position was communicated to Ms. Scott. That judgment was not appealed, and Ms. Scott did not return to work with Piccadilly or any other employer. On December 14, 1995, Ms. Scott filed a claim seeking reinstatement of workers' compensation benefits, asserting that her condition had deteriorated and that her treating physician was of the opinion that she could not return to work. The workers' compensation judge denied the claim. In the previously-mentioned unpublished opinion, we affirmed the judgment on appeal, finding that other than subjective complaints, there was no evidence of a change in Ms. Scott's condition since the prior trial.
On April 10, 1997, Ms. Scott filed the instant claim, alleging that her employer had arbitrarily, capriciously, and unreasonably refused to allow her a choice of a neurosurgeon despite the fact that she had never been evaluated or treated by a neurosurgeon. She claimed entitlement to penalties and attorney fees for the refusal to authorize evaluation and treatment by a neurosurgeon.
The matter was submitted on briefs and stipulations of the parties. The parties submitted the following stipulations:
1. Mark Zimmerman, Administrative Hearing Officer for the Office of Workers' Compensation decided on October 10, 1996 that the employee's medical condition had not changed since the decision of Kathryn Van Hoof dated *1298 November 2, 1994, such that a modification of Judge Van Hoof's decision was warranted.
2. The decision of Judge Zimmerman was affirmed by the Third Circuit on April 2, 1997.
3. Counsel for employee submitted a request for referral to a neurosurgeon of the employee's choice, Dr. Warren Long, in Shreveport, Louisiana.
4. Upon receipt of the demand, the claims adjuster, Mark Goldich, obtained a complete copy of the current medical records from Dr. Douglas Waldman, the employee's treating physician.
5. Mr. Goldich submitted Dr. Waldman's records; a copy of the report of an independent medical examination performed by Dr. Gordon Mead; orthopaedic reports from Dr. Robert Po, dated October 14, 1992 through March 11, 1994; orthopaedic reports from Dr. Baer Rambach dated April 1, 1993 and June 1, 1995; report of occupational therapist, Anna Lavespere, dated March 16, 1992; copies of four depositions: that of Dr. Mead, dated July 27, 1994; that of Anna Lavespere, dated August 2, 1994; that of Dr. Waldman, dated September 5, 1996; and, that of Dr. Rambach, dated July 11, 1996; and, diagnostic studies: CT scan of the lumbar spine, dated May 30, 1991 and an MRI scan, dated March 9, 1995 to Gregory L. Smith, M.D., a board certified occupational medicine physician in Dunwoody, Georgia, for utilization review purposes.
6. Mr. Goldich received the report of Dr. Gregory L. Smith, indicating that no medical necessity existed for a neurosurgical evaluation.
7. Mr. Goldich provided Mr. Pucheu [Ms. Scott's attorney] with a copy of Dr. Gregory L. Smith's report and advised that given Dr. Smith's finding that there was no medical necessity for a neurosurgical opinion, the claimant's request to see Dr. Long was denied.
8. Employee contends that she continues to experience pain in her back and down her right leg.
9. Employee desires to see Dr. Warren Long as her treating neurosurgeon and intends to see him as soon as she can, should the Court rule in her favor, herein.
The workers' compensation judge granted the request to see Dr. Long, stating in part:
The court notes that the date of injury was on April 18, 1991, that since the accident claimant has received extensive medical care, and that her treating doctor (an orthopedist) has not recommended she be evaluated by a neurosurgeon. Further, it is possible, as defendants contend, that an evaluation by a neurosurgeon is not a medical necessity (though that argument has more validity when a second choice within a specialty is at issue); and that claimant may be shopping for a doctor's opinion as a basis for seeking another modification of a prior judgment. However, claimant has not yet selected a neurosurgeon and the stated concerns are also outweighed by the possibility that Dr. Long may offer care that will be beneficial to claimant, such as some relief of her painful symptoms.
The workers' compensation judge denied penalties and attorney fees. Piccadilly appeals.

OPINION
La.R.S. 23:1121(B) provides:
The employee shall have the right to select one treating physician in any field or specialty. After his initial choice the employee shall obtain prior consent from the employer or his worker's compensation carrier for a change of treating physician within that same field or specialty. The employee, however, is not required to obtain approval for change to a treating physician in another field or specialty.
The neurosurgeon would be Ms. Scott's first choice in that speciality. However, it is Piccadilly's position that while La.R.S. *1299 23:1121(B) allows the employee to select one treating physician in any field or specialty, that statute must be read in conjunction with La.R.S. 23:1203(A), which requires that the treatment be medically necessary in order for the employer to be responsible for the expenses. We agree.
La.R.S. 23:1203(A) provides in part: "In every case coming under this Chapter, the employer shall furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of this state as legal...." (Emphasis added).
The clear terms of La.R.S. 23:1203(A) require its application to "every case coming under this Chapter...." Our supreme court has explained that where a part of an act is to be interpreted, it should be read in conjunction with the rest of the act and all other related laws on the same subject. Theriot v. Midland Risk Ins. Co., 95-2895 (La.5/20/97); 694 So.2d 184. Indeed, the third circuit has specifically held that La.R.S. 23:1121 must be read in conjunction with the other provisions of Title 23, including La.R.S. 23:1203. Lemoine v. Hessmer Nursing Home, 94-836 (La.App. 3 Cir. 3/1/95); 651 So.2d 444. Lemoine recognized that while La.R.S. 23:1121(B) requires that an employee obtain prior consent from the employer or his workers' compensation carrier for a change of treating physician within that same field or specialty, if an employee fails to obtain such consent prior to seeing another physician in the same field or specialty, an employer is still bound to provide those expenses, except for the initial unauthorized visit, as long as the treatment is both reasonable and necessary to alleviate the employee's symptoms. Likewise, we hold that while a claimant has the right to select one treating physician in any field or specialty under La.R.S. 23:1121(B), the treatment must be necessary under La. R.S. 23:1203(A) in order for the employer to be bound to pay for those expenses.
We now address whether the requested treatment by a neurosurgeon is "necessary" as required by La.R.S. 23:1203(A). We note that the workers' compensation judge stated that it was possible that an evaluation by a neurosurgeon was not a medical necessity. However, as we interpret the workers' compensation judge's ruling, it is in accordance with the principles set forth above in that the workers' compensation judge recognized Ms. Scott's right to select a neurosurgeon under La.R.S. 23:1121(B) and that the neurosurgeon might offer care that would relieve her painful symptoms. This court has held that an employee is entitled not only to treatment that cures her work injuries, but also to palliative care that relieves her pain. Ferrier v. Jordache-Ditto's, 94-1317, 94-1318 (La.App. 3 Cir. 5/17/95); 662 So.2d 14, writ denied, 95-2865 (La.2/2/96); 666 So.2d 1100.
The workers' compensation judge obviously credited Ms. Scott's assertion through the stipulation that she continues to experience pain in her back and down her right leg, and the workers' compensation judge found that the sought-after care might relieve the painful symptoms. While we have found nothing in the record to indicate that Ms. Scott's treating physician, Dr. Douglas Waldman, an orthopedist, was of the opinion that Ms. Scott needed to see a neurosurgeon, we do not find this factor determinative of the issue, particularly since the record reveals that as late as June 2, 1997, Dr. Waldman noted that Ms. Scott still had lumbar pain. Thus, we find that the evidence reasonably supports a finding of necessity and that this finding is not clearly wrong. Therefore, we affirm the authorization for evaluation by Dr. Long.

DISPOSITION
For the foregoing reasons, we affirm the judgment. We assess costs of this appeal to Piccadilly.
AFFIRMED.