STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

**05-0239**


**BILLY PRICE, JR.**

**VERSUS**

**RATCLIFF CONSTRUCTION COMPANY**


************

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DIST. 2
PARISH OF RAPIDES, NO. 03-05724,
HONORABLE JAMES L. BRADDOCK
WORKERS' COMPENSATION JUDGE

************

**JIMMIE C. PETERS**
**JUDGE**

************

Court composed of John D. Saunders, Jimmie C. Peters, and Billy H. Ezell, Judges.


**AFFIRMED AND RENDERED.**


**Stephen Everett**
**Attorney at Law**
**823 Johnston Street**
**Alexandria, LA  71301**
**(318) 443-6312**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Billy Price, Jr.**

**L. Lyle Parker**
**Bolen, Parker, & Brenner, LTD**
**Post Office Box 11590**
**Alexandria, LA  71315**
**(318) 445-8236**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Ratcliff Construction Company**

PETERS, J.

## MEMORANDUM OPINION

In this workers' compensation case, Ratcliff Construction Company (Ratcliff) discontinued payment of workers' compensation benefits to its former employee, Billy Price, Jr., based on its contention that Mr. Price violated the provisions of La.R.S. 23:1208 and thereby forfeited his workers' compensation benefits. Mr. Price sought reinstatement of benefits, penalties and attorney fees. The workers' compensation judge (WCJ) rendered judgment in favor of Mr. Price, ordering reinstatement of benefits and payment of a pain management program and awarding attorney fees of $7,500.00. Ratcliff appeals, contending that the WCJ erred in finding that Mr. Price did not violate the provisions of La.R.S. 23:1208, in finding that it was arbitrary and capricious in terminating benefits, and in awarding excessive attorney fees. Mr. Price has answered the appeal, seeking additional attorney fees for work done on appeal.

In rendering judgment, the WCJ provided extensive reasons for judgment as follows in part:

> The defense presented to the claim was the violation of Revised Statute 23:1208, a misrepresentation of claim. The facts at trial showed that on or about July 12th of 2002, Mr. Price worked as a manual laborer for Ratcliff Construction, and he was removing some plywood concrete forms when he felt a pain in his back which he described as a stinging sensation.
> He continued to work that day, he returned to work -- that was a Friday, and returned to work on Monday. And worked for a couple of days in pain when he was referred by his employer to the Rapides Industrial Medicine [facility].
> He was seen there on July 17th by Dr. Robert Smith who diagnosed sciatica. When Mr. Price did not improve he recommended an MRI which was performed and revealed a presence of a large herniated disc at the lumb[o]sacral area.
> He referred Mr. Price to Dr. Lawrence [Drerup] a neurosurgeon. Dr. [Drerup] also diagnosed a large herniated disc at L5-S1 and recommended a minimally invasive microsurgery as an alternative to a lumbar disc fusion. According to Dr. [Drerup] this procedure would

improve Mr. Price's lower extremity pain problems but would probably leave him with some low back pain. And Mr. Price had this particular surgery on September 17th of 2002.

On November 19th and 20th of 2002, Mr. Price had an FCE performed. And on January 30th of 2003, Dr. [Drerup] released Mr. Price from his care, and based on the FCE performed opined that Mr. Price had a thirty percent whole body impairment, and that he was capable of returning to gainful employment [at a] sedentary, light, or medium duty level with appropriate restrictions.

Mr. Price came, again, under the care of Dr. Smith in February of 2003. He was no longer having any extremity pain, but he continued to complain of low back pain. He underwent another course of physical therapy. And by March 31st of 2003, he had a slightly increase[d] range of motion. He was able to sustain three hours of exercise. He did an increased pain rating of eight on a scale of ten and was referred back to his physician for further instructions and care.

Dr. Smith later referred Mr. Price to Dr. [Stephen] Katz for pain management and to Dr. James Quillin noting some depression problems regarding Mr. Price. Dr. Quillin saw Mr. Price and diagnosed him with major depression and chronic low back pain secondary to his occupational injury and recommended that he undergo a pain management course of sixteen weeks. The employer had Mr. Price seen by Dr. Jimm[ie] Cole. Dr. Cole saw Mr. Price on May 6th of 2003.

Significantly, with Dr. [Quillin] and Dr. Cole, they both realize and recognize that Mr. Price was a man of limited intelligence. In fact, after the testing performed by Dr. Cole, it was concluded that Mr. Price was mildly mentally retarded. His tests were considered to be invalid by Dr. Cole. But Dr. Cole considered that the test[s] were not invalid because of any misinformation given by Mr. Price. Simply that Mr. Price didn't understand any of the questions and therefore his test answers were really skewed.

Dr. Cole felt he had a mild mental retardation, major depression, and the pain disorder. He thought that Mr. Price's problems were primarily exacerbated by psychological issues. He said that Mr. Price was more susceptible to stress because of his low intelligence which left him unable to fall back on his mental capabilities to deal with problems.

He disagreed with the pain management program recommended by Dr. Quillin who said Mr. Price would benefit from a work conditioning program. He said it seemed that Mr. Price was better when he was actually doing things then as opposed to when he was inactive.

A video was taken of Mr. Price on May 22nd of 2003, which is a video that showed Mr. Price doing some gardening work. On May 27th of 2003, Mr. Price's benefits were terminated. At the time of the termination of benefits as pointed out by counsel for Mr. Price in his brief, the facts known by the employer at that time [were] that Dr. [Drerup] had released him with restrictions -- permanent restrictions and concluded that he would not return to the construction industry. Dr. Smith, in April, had maintained him on limited restrictions.

2

They had, had a vocational person examine and work with Mr. Price who was unable to locate any jobs for him and also noted his low intelligence level. They have not yet had the video tape of Mr. Price gardening reviewed by any of the physicians who had seen Mr. Price. And the basis of the defense was that Mr. Price, because when he saw Dr. Cole, told Dr. Cole that he wasn't doing any gardening. That the video taken of him subsequent to his visit with Dr. Cole which showed him to be gardening was the basis of a misrepresentation claim.

They took the deposition of Dr. Cole on December 2nd of 2003. Being in the possession of the video, they never mentioned the video to Dr. Cole at the time of that deposition. Counsel -- I'm not sure if counsel for Mr. Price was aware of that.

But I do note that when Mr. Price was seeing Dr. Quillin in August of 2002 -- I mean, excuse me -- August 12th of 2003, Mr. Price told Dr. Quillin and according to Dr. Quillin's report that he had tried to increase his activities by doing some gardening work and that, that seemed to cause him more muscle spasms and problems.

So it seems to this Court that Mr. Price was not trying to -- I don't know if Mr. Price was aware he had been videoed, but certainly he was upright, forthright with Dr. Quillin telling him in the summer of 2003, that he had tried to garden.

It's noteworthy that Dr. Quillin and Dr. Katz had been encouraging Mr. Price to be more active. And that even Dr. Cole suggested that his activity was beneficial to him as opposed to being inactive noting that when he was active, he was having less problems.

After the deposition of Dr. Cole, he apparently reviewed the video of Mr. Price gardening and noted that based on that video that Mr. Price was not forthright with him in his first examination about gardening. They showed the video to Dr. Smith. Dr. Smith concluded that Mr. Price was perhaps in his opinion not forthright with him with regard to what he was physically capable of doing or what his complaints were.

And quite frankly, this Court does not understand a 23:1208 misrepresentation defense. Because at the time Mr. Price saw Dr. Cole and told him he wasn't gardening, there's absolutely no evidence that at that time or up until that time, Mr. Price had done any gardening work.

The evidence is consistent and consistent throughout that Mr. Price has a partial permanent disability, and that he is not capable of returning to his job -- his pre-injury job. And that there had been no jobs located or found for him.

Because the 23:1208 claim is a strict construction claim, it's a severe and harsh penalty because Mr. Price is mildly mentally retarded. Because of the conclusions reached by Dr. Cole about Mr. Price's inability to comprehend the questions that he was asked, I place no credence in the opinions of Dr. Cole or Dr. Smith that Mr. Price exaggerated anything about his physical capabilities. Because all the information was there including an FCE that said Mr. Price was probably capable of medium duty work.

3

There is simply no misrepresentation about gardening when that [w]as alleged to have occurred.

Louisiana Revised Statutes 23:1208(A) provides: "It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation." A violation of La.R.S. 23:1208 may result in forfeiture of benefits. La.R.S. 23:1208(E). Importantly, La.R.S. 23:1208 must be strictly construed because forfeiture is a harsh remedy. *Whaley v. Christus St. Patrick Hosp.*, 04-1296 (La.App. 3 Cir. 2/2/05), 893 So.2d 915, *writ denied*, 05-531 (La. 4/29/05), 901 So.2d 1070. Moreover, the employer bears the burden of proving an La.R.S. 23:1208 violation. *Id.* The question of whether an employee has forfeited his right to workers' compensation benefits is one of fact that will not be disturbed on appeal absent manifest error. *Wells v. Dunham Price, Inc.*, 04-209 (La.App. 3 Cir. 9/29/04), 883 So.2d 495. Having reviewed the evidence, we do not find that the WCJ was clearly wrong in finding that Mr. Price did not violate the provisions of La.R.S. 23:1208.

Additionally, "the WCJ's determination of whether an employer or insurer should be cast with attorney fees in a workers' compensation action is essentially a question of fact subject to the manifest error or clearly wrong standard of review." *Frith v. Riverwood, Inc.*, 04-1086, p. 12 (La. 1/19/05), 892 So.2d 7, 15. The evidence reveals that at the time Ratcliff terminated benefits there had been no express misrepresentation by Mr. Price as to his activities and no expert opinions as to any inconsistencies between Mr. Price's physical condition, complaints, and activities. Not until well over a half a year after Ratcliff terminated benefits did it obtain expert opinions in that regard. In any event, the WCJ chose to discount those expert

4

opinions in light of Mr. Price's limited mental capabilities, and the WCJ noted that it had already been determined that Mr. Price was capable of doing medium-duty work. While we might nevertheless have weighed the evidence differently and drawn different inferences from the facts, we do not find that the WCJ was clearly wrong in finding that Ratcliff was arbitrary and capricious in terminating benefits. We also find no abuse of discretion in the amount of the attorney fees the WCJ awarded.

Finally, Mr. Price has answered the appeal, seeking additional attorney fees for work done on appeal. We award Mr. Price an additional $1,500.00 in that regard.

## DISPOSITION

For the foregoing reasons, we affirm the judgment below in all respects and award Billy Price, Jr., an additional $1,500.00 in attorney fees for work done on appeal. We assess costs of this appeal to Ratcliff Construction Company.

**AFFIRMED AND RENDERED.**

This opinion is released as a Memorandum Opinion in compliance with Uniform Rules—Courts of Appeal, Rule 2-16.1(B).