# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

# WCA 05-856


**DARYL LEBERT**

**VERSUS**

**MCNEESE STATE UNIVERSITY**


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 3
PARISH OF CALCASIEU, NO. 02-09240
SAM L. LOWERY, WORKER'S COMPENSATION JUDGE

**\*\*\*\*\*\*\*\*\*\***


# JOHN D. SAUNDERS
# JUDGE

**\*\*\*\*\*\*\*\*\*\***


Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders, and
Oswald A. Decuir, Judges.

                                      **AFFIRMED AS AMENDED.**



**Marcus Miller Zimmerman**
**Attorney at Law**
**4216 Lake Street**
**Lake Charles, LA 70605**
**(337) 474-1644**
**Counsel for Plaintiff/Appellee:**
**Daryl Lebert**



**Adam L. Ortego Jr.**
**Assistant Attorney General**
**901 Lakeshore Dr., #820**
**Lake Charles, LA 70601**
**(337) 491-2844**
**Counsel for Defendant/Appellant:**
**McNeese State University**

**SAUNDERS, Judge.**

This is a workers' compensation case. Claimant Daryl Lebert was injured on October 1, 1999, while employed at McNeese State University. The workers' compensation judge held that Mr. Lebert was entitled to indemnity benefits from the date of termination of payment by McNeese State University, with a credit of thirty-nine weeks of indemnity for the amount of time Claimant was employed elsewhere. The court further held that Claimant was entitled to reasonable and necessary medical benefits for the work related injury. In addition, penalties in the amount of $2,000.00 and attorney fees in the amount of $6,000.00 were awarded to Claimant. We affirm the decision of the trial court and award an additional $2,500.00 in attorney fees for work done on appeal.

**FACTS AND PROCEDURAL HISTORY**

Claimant Daryl Lebert, a painter and maintenance worker at McNeese State University, was injured on October 1, 1999 when he attempted to lift a five-gallon bucket of sheet rock mud. Mr. Lebert injured his left shoulder and cervical area. He left work the day of the injury and returned to work 10 days later with a release slip allowing him to perform light duty work. On October 14, 1999, Dr. Drez, an orthopedist, diagnosed Mr. Lebert with a left rotator cuff and acromioclavular sprain. The x-rays taken of Claimant's left shoulder revealed no orthopedic problems. Dr. Drez recommended that Mr. Lebert receive physical therapy over the course of two weeks, and then he could return to work as tolerated. On October 22, 1999, Mr. Lebert was terminated from McNeese State University for disciplinary reasons. On October 28, 1999, Mr. Lebert returned to Dr. Drez's office. Dr. Drez saw little improvement and ordered an MRI of Claimant's left shoulder. On November 4, 1999, the MRI was negative. Dr. Drez found that Mr. Lebert's symptoms were

secondary to rotator cuff strain with resulting tendinitis in the shoulder, and on November 8, 1999, he injected Claimant's left shoulder, almost completely eliminating the pain. Again, he recommended physical therapy and stated that Mr. Lebert could return to light duty work.

On November 15, 1999, suspecting that Mr. Lebert may be suffering from a cervical disc disease, Dr. Drez referred him to another orthopedist, Dr. James Perry, for an evaluation of his cervical area. Dr. Perry took x-rays of the neck on November 30, 1999. The x-rays of the neck were negative, and Dr. Perry diagnosed Mr. Lebert with a cervical strain and recommended physical therapy. No MRI of the neck was conducted. Dr. Perry noted on January 18, 2000 that Mr. Lebert's neurological exam was stable and that he had made "significant" progress. He recommended continuing physical therapy. On February 1, 2000, Dr. Perry recommended that Mr. Lebert return to work without restrictions after finding that his systems were negative, his cervical range of motion was normal, and his neurological exam was stable. He concluded that Mr. Lebert had a resolved cervical sprain. Although they had terminated his employment in October 1999, McNeese State University continued to pay indemnity benefits to Mr. Lebert until February 6, 2000, when they were notified of his release by Dr. Perry.

More than two years later, on October 29, 2002, Mr. Lebert returned to Dr. Perry's office, complaining of pain in his shoulder and cervical area. He saw no other physicians between his last visit to Dr. Perry's office in February of 2000 and the October 29, 2002 visit. At this time, Dr. Perry diagnosed Mr. Lebert with bursitis and tendinitis in the left shoulder and ordered another MRI of the left shoulder which was normal. Dr. Charles Lim reviewed the MRI and found that there was no evidence of

2

a rotator cuff tear and no definite signs of bony edema or bursitis. He noted that there was little change from the November 4, 1999 MRI, which was also negative.

Mr. Lebert filed a disputed claim for compensation at the Office of Workers' Compensation against McNeese State University on December 12, 2002, claiming that he was owed supplemental earnings benefits. Following a hearing on a Rule to Show Cause, the Workers' Compensation Court ordered that Claimant be allowed to see Dr. Lynn Foret, an orthopedic specialist, as his choice of physician and that he be evaluated as soon as possible. On January 28, 2004, Dr. Foret ordered an MRI of the cervical area and found that Mr. Lebert had a tear in the left shoulder rotator cuff and a herniated disc in the cervical area. He concluded that Claimant may require surgery in his left shoulder and neck. An independent medical examination was performed by Dr. Daniel Yanicko, Jr. on May 4, 2004. From this examination, he determined that there was a left shoulder strain and sprain with underlying rotator cuff disease and a chronic strain and sprain of the cervical spine. He also noted that the x-rays and an MRI of the cervical area suggested a C5-6 disc herniation. The cervical MRI and the reports of Drs. Foret and Yanicko were never sent to or reviewed by Dr. Perry, nor was he asked by Appellant to comment on the findings or opinions of the other physicians.

This matter came to trial on January 27, 2005. After the matter was taken under advisement, the court issued oral reasons for judgment on March 9, 2005. The Workers Compensation Court held that Mr. Lebert was entitled to supplemental earnings benefits from the date of termination of temporary total disability benefits, which was February 6, 2000, with a credit for the thirty-nine weeks of indemnity during which Claimant was employed. The court further held that Claimant was

3

entitled to reasonable and necessary medical care, including, but not limited to, the treatments recommended by Dr. Foret and Dr. Yanicko. The court awarded $2,000 in penalties and $6,000 in attorney fees to Claimant. The judgment was signed on March 28, 2005. Defendant now appeals.

## ASSIGNMENTS OF ERROR

1) The trial court erred in ruling in favor of Claimant.

2) The trial court erred in denying the defendant's exception of prescription.

3) The trial court erred in awarding penalties and attorney fees to Claimant.

## STANDARD OF REVIEW

In workers' compensation cases, the factual findings of the trial court are subject to the manifest error standard of review. *Smith v. Louisiana Dep't of Corrections*, 93-1305, p.4 (La.2/28/94), 633 So.2d 129, 132; *Freeman v. Poulan/Weed Eater*, 93-1530, pp.4-5 (La.1/14/94), 630 So.2d 733, 737-38. In applying the standard, the appellate court must determine not whether the trier of fact's conclusion was right or wrong, but that it was reasonable. *Freeman*, 630 So.2d at 737-38; *Stobart v. State*, 617 So.2d 880, 882 (La.1993); *Mart v. Hill*, 505 So.2d 1120, 1127 (La.1987). Where there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous. *Stobart*, 617 So.2d at 882. Therefore, "if the [factfinder's] findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Sistler v. Liberty Mut. Ins. Co.*, 558 So.2d 1106, 1112 (La.1990).

## LAW AND ANALYSIS

**Assignment of Error 1:**

In order for a claimant in a workers' compensation case to receive benefits for temporary total disability, he must prove by clear and convincing evidence that he is physically unable to engage in any employment or self-employment due to his injury. *Veazie v. Gilchrist Const. Co.*, 04-118 (La.App. 3 Cir. 6/2/04) 878 So.2d 742, *writ denied*, 04-1692 (La. 10/8/04), 883 So.2d 1018. In order for a claimant to establish by clear and convincing evidence that he is unable to engage in any type of employment, he must introduce objective medical evidence. *Ratcliff v. Brice Bldg. Co.*, 03-624 (La.App. 5 Cir. 11/12/03), 861 So.2d 613. Workers' compensation laws are construed liberally in favor of the claimant. However, the claimant carries the burden of proving by a preponderance of the evidence that the injury caused his disability. *Id*.

In this case, there is no dispute that Mr. Lebert injured himself while he was working at McNeese State University. Claimant argues that this injury disabled him. Disability is presumed if before the occurrence of the accident, claimant was in good health, and commencing with the accident, the disabling symptoms appeared and continuously manifested themselves thereafter, provided there is a reasonable possibility of a causal connection between the accident and the disabling condition. There is also a presumption of disability if the nature of the accident together with other facts of the case raise a natural inference through human experience of such a causal connection. *Walton v. Normandy Village Homes Assoc. Inc.*, 475 So.2d 320 (La. 1985); *Jeanise v. Cannon*, 04-1049 (La.App. 3 Cir. 2/23/05), 895 So.2d 651, writs denied, 05-0785, 05-0788 (La. 5/13/05), 902 So.2d 1021). Appellant, on the other hand, argues that although Mr. Lebert was injured on the job in October 1999, his cervical sprain was resolved by February 2000, as Dr. Perry had determined. They

argue that another injury must have occurred after his termination from McNeese State University, causing him to suffer a herniated disc as was shown in the 2004 MRI of Claimant's cervical area. Appellant points specifically to the x-rays and MRI of November 1999 taken a month after Mr. Lebert's injury and an MRI taken two years after the date of Mr. Lebert's injury. Appellant points out that the first x-rays and MRI show no objective signs of injury, and the subsequent MRI shows little change from the previous one. However, an MRI taken in 2004 shows major injury to Claimant's neck and shoulders. Therefore, Appellant asserts that there must have been an intervening incident which caused this injury. The 2004 MRI arguably shows a shoulder injury that was not readily apparent in the previous x-rays and MRIs. Appellant, however, failed to get an analysis or opinion on these findings from Dr. Perry, or any other physician, for that matter. Therefore, there is no medical evidence in the record showing that the 2004 MRI reflects a new injury. We cannot determine from the record whether it is a new injury or whether it is an injury that was simply not picked up by the previous scans. Appellant also argues that there is a neck injury that was not previously apparent. However, the first x-rays and MRI conducted in 1999 as well as the MRI ordered in 2002 did not include the cervical area; they were only of the left shoulder. The first time an MRI of the cervical area was conducted was in 2004. We, therefore, cannot determine whether the herniated disc was a result of the original accident or whether it was the result of a hypothetical intervening accident, as Appellant asserts. Appellant has offered no evidence to prove that an intervening accident did, in fact, cause this injury. Without such evidence, we do not find the trial court's holding to be unreasonable.

6

The Appellant further argues that Claimant made false representations and that any right he may have had to collect from McNeese State University was forfeited by making such representations. In order for a claimant to forfeit his workers' compensation benefits, he must have: (1) made a false statement or representation; (2) willfully made the statement or misrepresentation; and (3) made the statement or misrepresentation for the purpose of obtaining or defeating any benefits or payments. *Lowe's Companies, Inc. v. Leblanc,* 02-730 (La.App. 3 Cir. 2/5/03), 839 So.2d 434. Appellant points out a long list of misrepresentations allegedly made by Mr. Lebert. First, Appellant points out that Mr. Lebert testified in his deposition and at trial that he was not terminated from his employment at St. Patrick Hospital. However, Mr. Lebert's supervisor at St. Patrick's, Mr. Savario, testified that Mr. Lebert had been terminated. Mr. Lebert also testified that he did not undergo any kind of physical examination upon accepting his employment, and while working at the hospital, he could only use one arm. To the contrary, Mr. Savario testified that Mr. Lebert did have to pass a physical in order to work at St. Patrick's. He also testified that Mr. Lebert performed his work satisfactorily, that he appeared to have no difficulty performing the job, never complained of any pain, and he was fired for reasons unrelated to his job performance. While Mr. Lebert's testimony conflicts with Mr. Savario's testimony, there is no conclusive evidence as to whose testimony is accurate. Appellants further assert that Mr. Lebert testified in his deposition that he worked only for St. Patrick's Hospital and Winters Construction subsequent to his termination from McNeese State University. However, at trial, he testified that he had worked at Realty Source after he worked at St. Patrick's. These issues did not need to be and were not resolved by the Workers' Compensation Court. They are collateral

issues, the resolution of which have no direct bearing on the outcome of this case. Therefore, even if it were shown that Claimant was inaccurate, such inaccuracy on collateral issues would not support a finding of willful misrepresentation. *Lowes Companies, Inc.*, 839 So.2d 434.

Next, Appellant claims that Mr. Lebert testified falsely about his physician of choice. At a hearing on that issue, Mr. Lebert testified that McNeese sent him to see Dr. Drez, and insisted that he did not see Dr. Seep, his family doctor, after the injury. Appellant points out that Mr. Lebert's testimony differed in a deposition taken on March 4, 2004.

> Q. Now, didn't you also see him [Dr. Seep] after your October '99 injury?
>
> A. Well, he's my – he's my regular doctor.
> ***
> Q. And that you went to see – what I have is that you went to see Michael Seep initially, Dr. Michael Seep.
>
> A. I went to see Charlene Broussard at McNeese, and she set me up with my doctor and he sent me to – or he – somehow I ended up at Dr. Drez.

While Mr. Lebert's recollection of which doctor he saw when may not be accurate, it is not relevant to the determination of his entitlement to benefits, and therefore, cannot support a finding of willful misrepresentation.

Appellant also argues that Mr. Lebert testified that Dr. Perry did not treat him for his neck complaints, which is contradicted by the fact that there were x-rays of Mr. Lebert's neck taken on November 30, 1999. Dr. Perry also diagnosed Mr. Lebert with a cervical strain and referred him for physical therapy. Despite the testimony of Mr. Lebert, the medical evidence and doctor's testimony has been entered into the record,

8

and stands on its own. The fact that Mr. Lebert's recollection is inaccurate does not support a finding of willful misrepresentation.

Finally, Appellant urges that Mr. Lebert claimed that he was fired from McNeese because of his workers' compensation claim, but in fact, he was fired justifiably. We find this to be yet another collateral issue wholly irrelevant to Mr. Lebert's entitlement to benefits under the law of workers' compensation. While Mr. Lebert's opinion as to the reason for his firing may be inaccurate, it is clear that whether or not Mr. Lebert was fired due to his claim has no direct bearing on his entitlement to benefits for the accident.

The trial court did not find that Mr. Lebert made any misrepresentation or fabrication of the essential facts for the purpose of obtaining workers' compensation benefits. We agree. Accordingly, we affirm the decision of the trial court.

**Assignment of Error No. 2:**

In its second assignment of error, Appellant argues that the trial court erred in denying its exception of prescription. Appellant argues that Mr. Lebert's claim for benefits prescribed under La.R.S. 23:1209 and should have been dismissed. Louisiana Revised Statute 23:1209 provides:

> A. In case of personal injury, including death resulting therefrom, all claims for payments shall be forever barred unless within one year after the accident or death the parties have agreed upon the payments to be made under this Chapter, or unless within one year after the accident a formal claim has been filed as provided in Subsection B of this Section and in this Chapter. Where such payments have been made in any case, the limitation shall not take effect until the expiration of one year from the time of making the last payment, except that in cases of benefits payable pursuant to R.S. 23:1221(3) this limitation shall not take effect until three years from the time of making the last payment of benefits pursuant to R.S. 23:1221(1), (2), (3), or (4). Also, when the injury does not result at the time of, or

> develop immediately after the accident, the limitation shall not take effect until expiration of one year from the time the injury develops, but in all such cases, the claim for payment shall be forever barred unless the proceedings have been begun within two years from the date of the accident.

Therefore, a claimant must file his claim for workers compensation benefits within: (1) one year from the date of the accident; (2) one year from the date of the last compensation payment for total disability or three years from the last payment of partial disability; or (3) one year from the time the injury develops if not immediately manifested, but, in any event, no more than two years after the accident. *Iverstine v. Albemarle Corp.*, 02-2555 (La.App. 1 Cir. 7/2/03), 852 So.2d 492, *writ denied,* 2003-2583 (La. 12/12/03), 860 So.2d 1154. In the instant case, McNeese State University was paying Mr. Lebert supplemental earnings benefits under La.R.S 23:1221(3) until February 6, 2000. Therefore, because it specifically falls under the exception found in La.R.S. 23:1209, Mr. Lebert's claim for payment would not have been barred until three years from the date of the last payment of supplemental earnings benefits by McNeese State University. By filing on December 2, 2002, Mr. Lebert was well within the three year prescriptive period.

Claimant maintains that his claim has not prescribed, but argues the Appellant is precluded from now raising this objection, as it had never specifically pled this exception. Louisiana Code of Civil Procedure Article 927 dictates that an objection of prescription is raised through the peremptory exception and must be specifically pled. However, a peremptory exception may be raised at any time, and at any stage in the proceedings. Therefore, the issue of prescription is properly before us.

10

The trial court did not err in denying Appellant's exception of prescription, as Claimant filed his claim within the three years allowed by La.R.S. 23:1209. Accordingly, we find that this assignment of error lacks merit, and weaffirm the holding of the trial court.

**Assignment of Error No. 3**

Appellant further argues that the trial court erred in awarding penalties and attorney fees to the Claimant. Under La.R.S. 23:1201(F), a claimant in a workers' compensation case has the burden of proving his entitlement to statutory penalties for the employer's refusal or failure to timely pay workers' compensation benefits. To avoid the imposition of penalties and attorney fees, the employer and its insurer must provide factual and medical evidence to reasonably controvert a workers' compensation claim. *Bolton v. Mike Fleming Construction*, 36,521 (La.App. 2 Cir. 12/11/02), 833 So.2d 1177. The employer must have an "articulable and objective reason to deny benefits at the time it took the action." *Authement v. Shappert Engineering*, 02-1631 (La. 2/25/03), 840 So.2d 1181, 1188.

Under *Bolton*, penalties should be imposed only when there is no good faith or just cause on the part of the employer and his refusal to pay the benefits. A workers' compensation judge's decision to award attorney fees and penalties is subject to the manifest error standard of review. *Bolton,* 833 So.2d 1177.

Appellant asserts that Claimant's rights to benefits were "reasonably controverted" by the factual and medical information available to McNeese. It argues that the doctors' unrestricted release of Claimant, Claimant's failure to report back to his doctor for over thirty-three months, and his lack of veracity reasonably justify their

11

opposition to the claim. However, Claimant submitted evidence, in the form of physicians' opinions, that was developed in 2004 which tended to support his claim for disability. Although this evidence differed from evidence Appellant gathered from Dr. Perry, it did not ask Dr. Perry to examine or give an opinion on this new medical evidence. Appellant had a duty to investigate the claim, and could not simply ignore the new evidence. Given the fact that Appellant chose not to investigate the new medical evidence, it is difficult for them to prove the claim was reasonably controverted. Therefore, we do not find that the trial court committed manifest error in awarding attorney's fees and penalties to Claimant. Accordingly, we affirm the trial court's award of attorney fees and penalties to Claimant.

Additionally, in the answer to the appeal, Claimant has prayed for an award of additional attorney fees for work done on this appeal. We award Claimant $2,500.00 in attorney fees for work done on this appeal.

## CONCLUSION

The judgment of the trial court is affirmed. Costs of the appeal are assessed against Appellant. Additionally, Claimant is awarded $2,500.00 in attorney fees for work done on appeal.

**AFFIRMED AS AMENDED.**