STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

WCA 06-481


SARAH CAPTAIN

VERSUS

CITGO PETROLEUM CORPORATION


**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 3
PARISH OF CALCASIEU, NO. 04-06625
SAM L. LOWERY, WORKERS' COMPENSATION JUDGE

**********

BILLY HOWARD EZELL
JUDGE

**********

Court composed of Oswald A. Decuir, Marc T. Amy, and Billy Howard Ezell, Judges.


AFFIRMED AS AMENDED.


Deanne Breaux McCauley
Rabalais, Unland & Lorio
5100 Village Walk, Suite 300
Covington, LA 70433
(985) 893-9900
Counsel for Defendant/Appellant:
Citgo Petroleum Corporation

Marcus P. LaCombe
The Townsley Law Firm
3102 Enterprise Blvd.
Lake Charles, LA 70601
(337) 478-1400
Counsel for Secondary Plaintiff/Appellant:
Sarah Captain

**EZELL, JUDGE.**

Sarah Captain and her employer, Citgo Petroleum Corporation, both appeal a judgment from the Office of Workers' Compensation. Both have alleged errors with the workers' compensation judge's decision.

## FACTS

On January 29, 2004, Ms. Captain was injured when the chair she was sitting in slipped out from under her and she fell to the concrete floor, hitting her neck on the chair. Due to complaints of pain in her knees, neck, and back, Citgo sent Ms. Captain to Dr. Allen Richert. MRI's of her neck, back, and left knee were performed. There were some degenerative changes in her lower back and a herniation was observed at C5-6 with some bulging at C6-7. There were severe degenerative changes in her knee. However, the knee problems are not at issue in this case because all medical evidence indicated that the changes were caused by Ms. Captain's morbid obesity. Ms. Captain is five-feet-two-inches tall and weighs from 300 to 330 pounds.

Dr. Richert referred Ms. Captain to an orthopedic surgeon, Dr. David Perry, who first saw Ms. Captain on February 20, 2004. Ms. Captain returned to see Dr. Perry on February 26, 2004 with her MRI's. Dr. Perry then recommended that Ms. Captain be treated conservatively with over-the-counter medication and return to work.

On March 2, 2004, Nancy Murphy, a senior claim representative with Ace Esis who handled the claim for Citgo, wrote a letter to Ms. Captain informing her that Dr. Perry had released her to return to work as of February 27. However, on March 15, 2004, Ms. Captain was seen by a podiatrist, Dr. Mickey Peshoff, for an infected toe. He restricted her from wearing steel toe boots. Since Citgo could not accommodate this request, she continued to receive temporary total disability benefits she had been

1

receiving since her accident at work. Dr. Peshoff did release her to return to work on April 13, 2004. Benefits were then discontinued.

Ms. Captain requested that Ms. Murphy allow her to see a neurosurgeon. Ms. Murphy indicated to Ms. Captain that she would have to see Dr. Perry to determine whether she needed to see a neurosurgeon. At this time, Ms. Captain hired an attorney.

On May 3, 2004, Ms. Murphy received a request from Ms. Captain to see her choice of orthopedic surgeon, Dr. Dale Bernauer. Ms. Captain saw Dr. Bernauer on June 9, 2004. At that time, her neck and back were hurting with the pain radiating down into her shoulders and arms. Dr. Bernauer opined that the fall caused the herniation in her neck. He offered her pain management therapy, hoping it would help her get back to gainful employment. Dr. Bernauer commented that there was nothing else he could do for her due to her morbid obesity. Dr. Bernauer continued seeing Ms. Captain emphasizing that she needs pain management therapy. He also recommended weight loss surgery.

On August 31, 2004, Ms. Captain filed a claim with the Office of Workers' Compensation. She requested reinstatement of benefits and the authorization of pain management therapy. She also requested penalties and attorney fees.

Dr. Lynn Foret was appointed to perform an independent medical examination. Dr. Foret examined Ms. Captain on November 16, 2004. Dr. Foret's report indicates that he also recommended pain management therapy in addition to weight loss surgery.

Prior to trial, Ms. Captain amended her claim to include a request to see a neurosurgeon and an award of penalties and attorney fees for Citgo's failure to authorize the examination. The case went to trial on June 3, 2005. Judgment was

2

rendered on November 14, 2005. The workers' compensation judge (WCJ) ordered that Ms. Captain be treated by a pain management physician of her choice. He also ordered that she be paid past-due benefits at $429.00 a week from April 13, 2004, with credit for any and all wages and sick pay earned by her subsequent to the date of the accident. Although the WCJ refused to order weight loss surgery, he did order that she be evaluated by a weight reduction specialist. Ms. Captain's demand to see a neurosurgeon was denied. A $2,000.00 penalty was assessed for failure to institute compensation benefits timely in addition to another $2,000.00 penalty for failure to provide pain management therapy. Attorney fees were also awarded in the amount of $7,000.00. Both parties appealed this judgment, with Ms. Captain appealing the ruling on the neurosurgeon and Citgo appealing the other rulings.

## CHOICE OF DOCTOR

Ms. Captain claims the trial court erred in refusing her request to be evaluated by a neurosurgeon. In oral reasons, the WCJ ruled that he did not think an evaluation by a neurosurgeon was appropriate because no doctor thought that it would help her at this point.

Louisiana Revised Statutes 23:1121(B) provides that an employee has a right to select one treating physician in any field or speciality. However, this statute must be read in conjunction with La.R.S. 23:1203(A), which requires that treatment be medically necessary in order for the employer to be responsible for the expenses. *Scott v. Piccadilly Cafeteria*, 97-1584 (La.App. 3 Cir. 4/1/98), 708 So.2d 1296.

Ms. Captain's own treating orthopedic surgeon, Dr. Bernauer, did not think that she needed to see a neurosurgeon. The record is absolutely devoid of any evidence that Ms. Captain needs to see a neurosurgeon. Furthermore, there is no evidence that a neurosurgeon could help Ms. Captain at this time. Therefore, we affirm the

3

decision of the WCJ that an evaluation by a neurosurgeon is not necessary.

## FORFEITURE OF BENEFITS

Citgo argues on appeal that the WCJ erred in not finding that Ms. Captain had made wilful misstatements in violation of La.R.S. 23:1208, thereby forfeiting workers' compensation benefits. In the same vein Citgo argues that Ms. Captain is not credible and, therefore, any medical opinions based on statements made by Ms. Captain to the doctors cannot be reliable.

> Louisiana Revised Statutes 23:1208(A) provides: "It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation." A violation of La.R.S. 23:1208 may result in forfeiture of benefits. La.R.S. 23:1208(E). Importantly, La.R.S. 23:1208 must be strictly construed because forfeiture is a harsh remedy. *Whaley v. Christus St. Patrick Hosp.*, 04-1296 (La.App. 3 Cir. 2/2/05), 893 So.2d 915, *writ denied*, 05-531 (La.4/29/05), 901 So.2d 1070. Moreover, the employer bears the burden of proving an La.R.S. 23:1208 violation. *Id.* The question of whether an employee has forfeited his right to workers' compensation benefits is one of fact that will not be disturbed on appeal absent manifest error. *Wells v. Dunham Price, Inc.*, 04-209 (La.App. 3 Cir. 9/29/04), 883 So.2d 495.

*Price v. Ratcliff Const. Co.*, 05-239, p.4 (La.App. 3 Cir. 11/2/05), 915 So.2d 979, 982-83.

There is no doubt that Ms. Captain suffers from numerous medical problems that predated this accident. She is morbidly obese which in turn has created other problems like diabetes and sleep apnea. She has suffered from serious depression which has required several hospital admissions. She had abdominal surgery which resulted in a staph infection and required that she be on bed rest for a year.

Our review of the medical questionnaires filled out by Ms. Captain reveals that she was forthcoming with her previous problems. However, Citgo has picked out incidences when it claims she made several misstatements. For example, when asked if she had previous lower back pain before the accident, she stated that she had a

4

kidney or bladder infection twenty years earlier. She was then confronted with her admittance into the hospital in 1984 for lumbar strain. Citgo has also pointed out that while Ms. Captain was in Vermilion Hospital for depression problems, she received pain medication for back, leg, wrist, and neck pain.

When asked about any previous slip and fall accidents, Ms. Captain denied that she had any. Citgo then reminded her of the time she choked, aspirated on soda, passed out, and struck her chin on concrete in 1998. As a result she broke her chin and bit through her lip. However, she had no neck or back injury from this incident.

Citgo also asked Ms. Captain if gastric bypass surgery had ever been recommended for her before, which she denied. She was then reminded that Dr. Jana Kaimal of the Sleep Disorder Center had recommended it. We find that the suggestion of gastric bypass surgery was listed as a recommendation in a letter to Ms. Captain's referring physician and not Ms. Captain. The actual sleep study was not performed until after this letter, at which time Ms. Captain was diagnosed with sleep apnea. Gastric bypass surgery was never mentioned again.

An inconsequential or inadvertent statement will not result in forfeiture of benefits. *Scallon v. Bosie Cascade Corp.*, 05-327 (La.App. 3 Cir. 11/2/05), 915 So.2d 1004. We find that Ms. Captain was very forthcoming with her previous problems. We do not see any wilful attempts on her part to hide information. When reminded of events, she admitted that they did occur. There is no indication that she lied to any of her doctors when seeking treatment. We find no error in the WCJ's ruling that Ms. Captain did not violate La.R.S. 23:1208.

**MEDICAL TREATMENT**

Citgo appeals the WCJ's ruling that Ms. Captain is entitled to pain management therapy. It also disagrees with the WCJ's decision that she is entitled to an evaluation

by a weight reduction specialist.

Louisiana Revised Statutes 23:1203 requires the employer to furnish all necessary medical treatment. Necessary medical treatment includes palliative treatment necessary to relieve an employee of the pain she suffers as a result of her disability as well as that designed to cure her work-related injury. *Scott*, 708 So.2d 1296. A WCJ's finding as to whether a particular medical treatment is necessary is factual in nature and will not be disturbed on review in the absence of manifest error or unless it is clearly wrong. *Freeman v. Poulan/Weed Eater*, 93-1530 (La. 1/14/94), 630 So.2d 733.

Weight Reduction Evaluation

Regarding the weight reduction evaluation, Citgo argues that Ms. Captain's morbid obesity problem preexisted her accident at work. It argues that the fact she needed to lose weight was not caused or associated in any way with the accident and, therefore, it was legal error for the WCJ to order that it be responsible for such expense.

While we agree that Ms. Captain's morbid obesity was not caused by her accident at work, this court has held that a weight reduction program was compensable as medically necessary when it is in an effort to help relieve the pain caused by the work injury. *Simmons v. State, through the Louisiana Health and Human Resources Adm.*, 502 So.2d 187 (La.App. 3 Cir.), *writ denied*, 503 So.2d 1017 (La.1987). *See also Fontenot v. Citgo Petroleum Corp.*, 529 So.2d 69 (La. App. 3 Cir. 1988).

There is no doubt that Ms. Captain has a serious weight problem which affected her health, even before this accident. She admitted she suffers from diabetes, sleep apnea, and even serious depression as a result of her weight. However, there

6

was ample medical evidence that Ms. Captain needed to lose weight in order to help alleviate the pain resulting from her fall at work.

As testified to by Dr. Bernauer, the pain that Ms. Captain suffers can be long-term in somebody her size because she has extra pressure on her back. Dr. Bernauer further explained that really obese people have muscles that are very weak. This makes them more susceptible to injury from a fall because of the weakness. Once they are hurt, they are more liable to stay hurt because they are carrying all the extra weight on top of the muscles that are damaged. He explained that she would benefit from weight loss for the injury she received at work.

In his initial report, Dr. Foret agreed that Ms. Captain would benefit from weight loss and would not improve anymore until she loses weight. He explained that it would be almost impossible to get her to return to work because of her size and what has happened to her back and neck.

As previously stated, Ms. Captain had been hospitalized for severe depression problems before the accident. The doctors recognized that Ms. Captain's psychological problems could affect her ability to lose weight.

As stated by the WCJ, the evidence is clear that Ms. Captain needs to lose weight if any other treatment is going to be successful in alleviating her work-related problems. He recognized that there may be problems with the success of Ms. Captain losing weight and that the proper approach to take was not clear at this time. We find no error in the WCJ's ruling that Ms. Captain is entitled to be evaluated by a weight reduction specialist.

Pain Management

Citgo also assigns as error the WCJ's ruling that Ms. Captain was entitled to pain management therapy. It claims that Ms. Captain failed to prove that pain

7

management therapy was medically necessary.

Dr. Bernauer observed that the MRI revealed a central disk herniation at C5-6, causing some massive effect on the spinal cord. He explained that this condition could be debilitating and painful. He has been adamant that Ms. Captain would benefit from pain management therapy since he first saw her. Dr. Bernauer explained that pain management therapy was the best way to try and get her back to some type of gainful employment. He further stated that had Ms. Captain received pain management therapy for the past year, her situation would be a lot better.

Even Dr. Foret recommended pain management therapy when he first saw her in November 2004. He stated that it would help her manage the chronic pain. He even continued to advocate pain management therapy when his deposition was taken, explaining that she would benefit from it and needed it to help control her medications. We find no error in the WCJ's decision that Ms. Captain is entitled to pain management therapy.

## TEMPORARY TOTAL DISABILITY BENEFITS

Citgo claims that Ms. Captain is not entitled to temporary total disability (TTD) benefits beyond three months after the accident. It argues that Ms. Captain's inability to return to work is caused by her depression which has nothing to do with any neck or back injury.

> In order for a claimant in a workers' compensation case to receive benefits for temporary total disability, he must prove by clear and convincing evidence that he is physically unable to engage in any employment or self-employment due to his injury. *Veazie v. Gilchrist Const. Co.*, 04-118 (La.App. 3 Cir. 6/2/04), 878 So.2d 742, *writ denied*, 04-1692 (La.10/8/04), 883 So.2d 1018. In order for a claimant to establish by clear and convincing evidence that he is unable to engage in any type of employment, he must introduce objective medical evidence. *Ratliff v. Brice Bldg. Co.*, 03-624 (La.App. 5 Cir. 11/12/03), 861 So.2d 613. Workers' compensation laws are construed liberally in favor of the claimant. However, the claimant carries the burden of proving by a preponderance of the evidence that the injury caused his

8

disability. *Id.*

*Lebert v. McNeese State University*, 05-856, p. 5 (La.App. 3 Cir. 2/1/06), 932 So.2d 678, 683.

Dr. Perry's reports indicate that he always thought Ms. Captain could go back to work and only needed over-the-counter medications. While he noted that the MRI did not reveal a surgical lesion in the cervical spine, he did not comment on the herniation. Dr. Bernauer agreed that no surgery was warranted at this time.

However, it was Dr. Bernauer's clear opinion that Ms. Captain cannot return to work due to the amount of pain she is suffering, even though her job at Citgo was considered sedentary. He did not find that she was exaggerating her symptoms. As testified to by Dr. Bernauer, a herniated disk can be debilitating and painful.

Dr. Foret's initial report after he saw Ms. Captain states that she could not work because her work restrictions were too many to list. It was his opinion that she could not go back to work until her complaints of pain in her neck and back decreased. In his deposition in February 2005, Dr. Foret then stated that there was no reason she could not go back to work. In his opinion her neck and back could go back to work but psychologically she could not. However, we observe that Dr. Foret had not examined Ms. Captain since the November visit. At the time of his initial report, a few days after examining Ms. Captain, Dr. Foret stated, "I think it is going to be almost impossible to get her to return to work because of her size and because of what has happened to the back and neck on big women like this who fall and have muscular strains to their back area . . . ."

The WCJ obviously did not give much credit to Dr. Perry's opinion when he stated that he "would not characterize Dr. Perry's view of Ms. Captain's complaints as dismissive, but the term is not completely inappropriate." We find no error in the

9

WCJ's conclusion that Ms. Captain is entitled to TTD benefits.

## PENALTIES AND ATTORNEY FEES

Citgo finally argues that the WCJ erred in awarding penalties and attorney fees. The WCJ awarded a $2,000.00 penalty for failing to institute compensation benefits timely and another $2,000.00 penalty for failing to provide pain management therapy. Attorney fees in the amount of $7,000.00 were also awarded.

The determination of whether an employer should be cast with penalties and attorney fees in a workers' compensation case is essentially a question of fact. *Reed v. Abshire*, 05-744 (La.App. 3 Cir. 2/1/06), 921 So.2d 1224. The "failure to authorize treatment is a failure to furnish compensation benefits warranting the imposition of penalties and attorney fees except when the claim is reasonably controverted." *Id*. at 1226 (citing *Authement v. Shappert Eng'g*., 02-1631 (La. 2/25/03), 840 So.2d 1181).

We find that Citgo chose to rely solely on the opinion of its treating physician, Dr. Perry, in choosing not to authorize pain management therapy and in discontinuing Ms. Captain's benefits. As we have previously explained, it was clear that Ms. Captain needed pain management therapy. Until her pain is controlled, she cannot go back to work. We find no error in the awards of penalties and attorney fees made by the WCJ.

In her own appeal, Ms. Captain has asked for an increase in attorney fees necessitated by the work performed on appeal. We find an additional award of $1,500 is appropriate for work performed in answering the issues raised by Citgo in its appeal.

For these reasons, judgment of the Office of Workers' Compensation is affirmed as amended to include an additional award of attorney fees in the amount of $1,500.00. Costs of this appeal are divided with five-sixths of the cost to be paid by

Citgo and one-sixth of the cost to be paid by Sarah Captain.

**AFFIRMED AS AMENDED.**